## Musser *against* Hyde.

The recorder, on recording a mortgage, endorsed the 15th of November 1836 on the mortgage as the time of its being left for record, and also made an entry in a book kept by him for that purpose, mentioning the date of the mortgage, the parties, and dating this entry the 15th of December 1836. After recording it he gave a certificate on the back of the mortgage, stating it was recorded the 15th of November 1836. *Held*, that the entry in the recorder's book must be considered the true date of the deed's being left for record, and that the certificate was of no avail against it.

*Held*, also, that parol evidence was not admissible to alter the time mentioned in the book, where it tended to affect the right of a purchaser acquired on the faith of the entry in the book.

Though notice to an agent is sufficient in law to affect his principal, yet this principle does not apply where the same person who is intrusted by a holder of a warrant of attorney to have judgment entered by the prothonotary, is at the same time intrusted as the agent of a mortgagee to have a mortgage recorded, but without the knowledge of the holder of the judgment withholds the warrant from the prothonotary for one day, to favour the mortgagee by giving priority to the mortgage. Such conduct is a fraud, and the mortgagee can receive no benefit from it.

ERROR to the Common Pleas of *Jefferson* county.

This was an ejectment brought by the plaintiffs in error, William Musser and Joseph Howell, against the defendants in error, Joseph S. Hyde, Erasmus Morey, and Jacob Ridgway, to recover 162 acres and 37 perches of land.

Both parties derived their claim to the land from Enos Gillis, as whose property it had been sold by the sheriff of the county under judicial process; first to the plaintiffs upon a judgment in debt, *sans breve*, entered in the Common Pleas of Jefferson county on the 16th of November 1836, against Enos Gillis, in favour

of John Singer and William Musser, one of the plaintiffs; and secondly, to the defendant, under a judicial proceeding had upon a mortgage, executed by the said Gillis to the defendant, Jacob Ridgway, on the 7th day of November 1836, but not recorded, according to the showing of the record which was given in evidence, until the 15th day of December 1836, nearly a month after the entry of the judgment under which the sale was made to the plaintiffs. On the trial the defendants gave the mortgage, with two endorsements thereon, in evidence. By the first endorsement, it appeared that the mortgage had been received by the recorder in his office for the purpose of being recorded on the 15th day of December 1836; but by the second endorsement, which was a certificate given by the recorder under his hand and seal of his office, that the mortgage was recorded in his office, it appeared to have been done on the 15th day of November 1836. The record, however, of the mortgage, as also the book kept in the recorder's office, showing the date when the mortgage was first received for being recorded, were produced and read in evidence, by which it appeared to have been entered for that purpose on the 15th day of *December* 1836.

The defendants, to repel the effect of this record evidence, and to show that the recorder had made a mistake of a month in the date of recording the mortgage, by entering it on his book as done in December instead of November, offered to prove by James L. Gillis that the mortgage was intrusted to him by the defendant, to be taken from Philadelphia, where it was executed, to the recorder's office in Jefferson county, and left there with the recorder for the purpose of being recorded; and that he did accordingly take and deliver it to the recorder for that purpose on the 15th day of *November* 1836. That he also took with him at the same time the judgment bond executed by Enos Gillis to John Singer and William Musser, the latter of whom is one of the plaintiffs in this action, upon which the judgment was entered, and the land in dispute sold to them afterwards, for the purpose of delivering it to the prothonotary of the Common Pleas of Jefferson county, that judgment might be entered upon it, and that he did not deliver the bond to the prothonotary until the 16th of November 1836, the next day after he delivered the mortgage to the recorder. This evidence was objected to by the plaintiffs, but admitted by the court, to which the plaintiffs excepted.

From the testimony of the witness, it appeared that the same person held the offices of recorder and prothonotary in the county; that the obligees in the bond intrusted him with it, to have judgment entered upon it in the prothonotary's office, without knowing that he was intrusted with the mortgage for the purpose of having it recorded; though he testified, that at the time the bond was executed it was told to the obligees that Jacob Ridgway had a mortgage, but nothing was said as to its being recorded or not

[Musser v. Hyde.]

recorded. It appeared also, from his testimony, that he withheld the bond from the prothonotary from the 15th, when he delivered the mortgage to him as recorder, to the 16th of the same month, for the purpose of giving the mortgage a preference in its lien upon the land, over that of the judgment that should be entered upon the bond, without any authority from the obligees to do so, or any intimation given by him to them that he had charge of the mortgage and would do so. But whether he did so at the instance of Jacob Ridgway, the mortgagee, or any other, or of his own mere motion, did not appear.

*H. Foster* and *Banks,* for plaintiffs in error, referred to the Act of Assembly authorizing the recording of deeds of mortgage, &c., and cited 2 *Whart.* 463, 471; 8 *Watts* 166; 9 *Johns.* 287; 13 *Serg. & Rawle* 167; 7 *Serg. & Rawle* 286; 17 *Serg. & Rawle* 70; 10 *Watts* 13; 6 *Whart.* 340; 1 *Rawle* 223.

*Biddle* and *Buffington,* for defendant in error, cited and referred to the 3d section of the Recording Act of 1715; *Addison* 384; 10 *Serg. & Rawle* 377; 6 *Watts* 269; 7 *Watts* 334; 6 *Watts* 53; 5 *Watts* 319. The Recording Act of 1820, which makes the time of leaving the mortgage in the recorder's office for the purpose of being recorded, the time it shall take effect, was also referred to. 1 *Randolph Rep.* 106; 10 *Watts* 24; 1 *Eng. Cond. Excheq. Rep.* 397; *Peters's C. C. Rep.* 185; 10 *Serg. & Rawle* 249; 4 *Binn.* 186; 1 *Penn. Rep.* 402; 2 *Whart. Dig.* 74; 7 *Watts* 261; 2 *Serg. & Rawle* 212; 3 *Penn. Rep.* 246.

The opinion of the Court was delivered by

KENNEDY, J.—The only question necessary to be determined in this case is, was the parol evidence, which was objected to by the counsel of the plaintiffs, admissible or not? By the sixth section of the Act of the 18th of March 1775, which is a supplement to the Act of the 28th of May 1715, providing for acknowledging and recording of deeds, every recorder of deeds is required to keep a book, in which he shall *immediately* make an *entry* of every *deed* or *writing* brought into his office to be recorded, mentioning therein the date, the parties, and the place wherein such lands, &c., granted or conveyed by the said deed or writing, are situate, *dating* the same *entry* on the *day in which* such deed or writing was *brought into his office.* And again, by an Act, passed the 28th of March 1820, relative to mortgages, it is enacted that "from and after the first day of October next, *all* mortgages, or defeasible deeds in the nature of mortgages, made or to be made, or executed for any lands, tenements, or hereditaments, within the commonwealth, shall have priority according to the date of recording the same, without regard to the time of making or executing such deeds; and it shall be the duty of the recorder to endorse the *time*

upon the *mortgages* or *defeasible deeds when left for record,* and to *number* the *same* according to the time *when* they are *left for record,* &c. And *no* mortgage, or defeasible deed in the nature of a mortgage, *shall be a lien* until such mortgage or defeasible deed *shall have been recorded,* or *left for record,* as aforesaid." Now, in the case before us, it would seem as if the recorder, intending to comply with the requirements of both these Acts, endorsed the 15*th* of *December* 1836 on the mortgage as the time when it was *left* for record, and likewise made an entry thereof, in a book kept by him for that purpose, mentioning the date of the mortgage, the parties thereto, &c., and *dating* the entry so made as of the 15*th* of *December* 1836. But after he had recorded it, intending most probably to comply also with the 3d section of the Act of 1715, providing for the acknowledging and recording of deeds, he gave a certificate on the back of the mortgage, under his hand and seal of his office, stating that it was recorded on the 15*th* of *November* 1836. This certificate, according to the 5th section of the same Act, is made evidence of the deed's having been recorded, at least for a certain purpose, by its being therein declared, that " all deeds and conveyances, made or to be made, and proved or acknowledged, and recorded as aforesaid, *which shall appear so to be by endorsement made thereon,* &c., shall be of the *same force and effect* here, for the *giving possession* and *seisin* and *making good* the *title* and *assurance* of the said lands, &c., as *deeds of feoffment* with *livery of seisin,*" &c. That such certificate is good evidence of the deed's having been recorded, so as to give to it the effect and operation of a deed of feoffment with livery of seisin, as it regards the giving possession and seisin, and making good the title and assurance of the lands thereby conveyed, cannot be questioned; but that it is to be regarded as the best evidence of the *date* of the deed's being recorded, or left in the recorder's office for that purpose, when it differs from the date of the short entry made on the back of the deed at the time of its receipt for record, for the special purpose of showing the true date of such receipt, and likewise from the entry made at the same time, for the like purpose, in the book of the recorder, according in *date* with that of the short entry endorsed on the deed, cannot be admitted or sustained upon any rational ground whatever; because the certificate endorsed upon the deed, of its having been recorded, is never made at the time of receiving it for record; nor can it be made with propriety until after the deed has been actually recorded, which may not be for weeks after it has been left or received for record. Generally, perhaps, it is done when the party entitled to it calls afterwards at the recorder's office to lift and take it away; which may be months after the time it was left for record. And as the deed, when recorded, takes effect as a recorded deed from the date of leaving it in the office for that purpose, the recorder, when he comes to make out a certificate

under his hand and his seal of office of the deed's having been recorded, ought, if he undertakes to insert therein the date of its being recorded, to insert, as such, the same day that he received it for record, as it shall appear from his short entry made on the deed, and likewise in his book kept for that purpose, both being made at the time the deed was received for record, for the special purpose of showing, at all times thereafter, the day when it was so received, and not to insert a different day suggested by his recollection merely, which may be frail or treacherous, and therefore much less to be relied on for accuracy than a written entry thereof, made at the time of the receipt of the deed for record. Besides, the entry made in the book of the recorder, kept in his office for that purpose, of the day when the deed was received for record, ought and must be considered as the true and correct date thereof, because it is required to be made therein with a view that persons, disposed thereafter to become purchasers of, or interested in any way in the estate transferred by the deed, may be informed thereof by making inquiry at the recorder's office. But it is perfectly plain, if what they shall thus find entered in the recorder's office, is not to be taken by them as true and correct, and therefore not to be relied on, that the primary and great object of the recording acts will be defeated.

This view of the matter, which we think is correct, leads inevitably to the conclusion, that the certificate of the time of recording the deed, endorsed thereon by the recorder, under his hand and seal of his office, as was done in this case, cannot avail against the entry thereof made in his book showing a different time. The latter must be considered as the true time. This also goes to show, that no parol evidence ought to be received to repudiate or alter the time mentioned in the recorder's book, of recording the deed, when its tendency would be to defeat or affect the right of a purchaser acquired upon the faith of the entry made in the book being correct.

But it is contended by the counsel for the defendant in error here, and it seems to have been the opinion entertained by the court below, that because the same person was employed and intrusted by the plaintiffs in the judgment, of whom is one of the plaintiffs in error, under which the latter purchased the land in dispute, to deliver the judgment bond, whereon the judgment was entered, to the prothonotary for the purpose of having judgment entered thereon, that was also intrusted by the mortgagee to deliver his mortgage, under which he afterwards purchased the land, to the recorder to be recorded, the plaintiffs in error must therefore be considered as having full knowledge of the fact that the mortgage was actually delivered to the recorder to be recorded one day before the judgment bond was delivered to the same as prothonotary, and the judgment entered thereon. Now, although it be generally true that notice to the agent, or his knowledge of

[Musser v. Hyde.]

the fact, is sufficient in law to affect his principal with notice or knowledge of the same fact, yet I am not aware that this principle has ever been applied to a case like the present, where the same person was intrusted as the agent of each party, without any knowledge, at least on the part of the holders of the judgment bond, that he was at the same time intrusted with the delivery of the mortgage, by the mortgagee, to the recorder to be recorded; and in doing so, contrary to his duty to the obligees, withheld this bond from the prothonotary for one day, in order to favour the mortgagee, by thus giving his debt a preference over that of the obligees.　The general rule, that the principal shall be affected by the knowledge of his agent, is founded upon principles of policy, and the presumption that the agent has communicated to his principal everything that may be material for the latter to know in relation to the subject of the agency, which has come to the knowledge of the former. It is fair to make this presumption, as it is the duty of the agent to communicate everything of the kind to his principal; and were it not for the operation of this rule, the principal would, most probably, in many instances reap all the advantages of an innocent purchaser, when, in fact, the knowledge acquired by him from his agent rendered the purchase unfair and unconscientious.　But there is also another rule which makes the fraud of the agent, in a civil point of view, the fraud of the principal, so far as to prevent the latter from deriving any benefit from it; for to allow him to do so, would be a violation of a third rule of law, which declares that no man shall take advantage of his own wrong.　Hence Mr Ridgway, the mortgagee, would seem to have no right to claim any advantage from the faithless conduct of his agent, in withholding the bond of the obligees from the prothonotary for one day after he delivered the mortgage, for the purpose of giving Mr Ridgway a priority of lien for his debt against the real estate of their common debtor.　It is clear that the agent of Mr Ridgway, having undertaken to deliver the bond of the obligees to the prothonotary, so that a judgment might be entered upon it, was bound to embrace the very earliest opportunity he had of doing so; but to withhold it, as he says he did, was a most culpable violation of his duty.　Suppose Mr Ridgway, himself, had taken the bond of the obligees, as his agent did, for the purpose of having a judgment entered upon it for the obligees, and he had acted in regard to it, as his agent says he did, could it be alleged, with the least colour of reason or justice, that he would be entitled to claim any advantage from his having done so to the prejudice of the obligees?　So far, I apprehend, from his being permitted to allege his own turpitude, and to derive a benefit from it, he would be considered liable to them for all the loss which they could show that they had sustained by his not having delivered their bond to the prothonotary, at least as early as he delivered his own mortgage.　We therefore think there was error

[Musser v. Hyde.]

in admitting the parol evidence, and leaving it as a question of fact to be decided by the jury, when the mortgage was recorded. Upon this ground, therefore, the judgment must be reversed, and a *venire facias de novo* awarded.

Judgment reversed, and a *venire facias de novo* awarded.