## Glading *versus* Frick.

1. Where certain instruments of writing are not required by law to be recorded in a particular book, they may be recorded in any book kept by the recorder; and a building contract is valid although recorded in a deed-book.

2. The Act of April 3d 1872 provides that every building erected under a written contract should be liable to the contractor alone for the work done and materials furnished, provided that such contract was duly recorded within fifteen days of its execution. In a scire facias upon a mechanics' lien against the owner, the defendant gave in evidence such a contract recorded in the deed-book. It was also admitted that there were certain specifications in the contract which were neither offered in evidence nor recorded. *Held*, that the plaintiff not being a party to the contract, and it being offered to establish the immunity of the defendant under the statute, the production of the specifications was not essential; that the recording of the contract itself without these specifications was sufficient, and that it was not improper to record the contract in the deed-book.

3. The court below directed a verdict for defendant, subject to a reserved point. The court in banc afterwards entered judgment for the plaintiff on the point reserved, *non obstante veredicto. Held*, that the more correct practice was to direct a verdict for the plaintiff, as a judgment could not be entered upon a reserved point for plaintiff where the verdict was for defendant.

January 24th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1875, No. 130.

Scire facias sur mechanic's lien by George L. Frick and Michael K. Snyder, trading as Frick & Snyder, against Samuel Glading, owner, and F. Cassell, contractor.

The claim was filed February 25th 1873, and was for $363, for materials furnished in the erection of a building on Susquehanna avenue, Philadelphia. The facts are sufficiently stated in the opinion of this court.

*H. Hazlehurst* and *James D. Bennett*, for plaintiffs in error.— Glading and Frick not having been parties to the contract, cannot raise the question that it was not properly recorded. Its terms are complied with as between the original parties, and the moment it was recorded, the material-men, for whose protection the Act of April 3d 1872, Pamph. L. 857 (repealed by the Act of March 6th 1873, Pamph. L. 217), was passed, had notice that the building was liable to the contractor alone. The omission to record the specifications was not material. The objection that the contract was recorded in the deed-book is of no avail : McLanahan *v.* Reeside, 9 Watts 518.

*Joseph C. Ferguson*, for defendants in error.—The specifications were made a part of the contract, and determined the character of the house to be built. They should have been offered in evidence with the contract : Stark. on Ev. 580. They should have been

[Glading *v.* Frick.

placed on record, so that the material-men might know whether the contractor was making a wise bargain, and whether he could safely be trusted; Jaques *v.* Weeks, 7 Watts 268; Friedley *v.* Hamilton, 17 S. & R. 70; Sturtevant's Appeal, 10 Casey 150. Each instrument must be recorded in its proper book, and a deed-book was not a proper place for this contract: Goepp *v.* Gartiser, 11 Casey 133; Luch's Appeal, 8 Wright 525.

Mr. Justice PAXSON delivered the opinion of the court, January 6th 1879.

What the precise ground was on which the verdict was set aside and judgment entered on the point reserved in favor of the plaintiffs below the record does not show. Against the mechanic's lien of the plaintiffs the defendants set up a written contract between Glading, the owner, and Franklin Cassel, the contractor, for the erection of the building against which the lien was entered. The object of the evidence was to secure for the owner the benefit of the provisions of the Act of Assembly of 3d of April 1872, that where any building or buildings should be erected in whole or in part by contract in writing, such building or buildings, and the land or lands whereon it or they shall stand, should be liable to the contractor alone for work done or materials furnished in pursuance of such contract, provided the contract should be acknowledged and duly recorded in the office for recording deeds within fifteen days after its execution. It was agreed at the trial on the part of the defendants that the book of original entries of the plaintiffs was correct; that the materials charged were delivered and used in the construction of the building; and that there were certain specifications for reference by both parties which were not recorded. And it was admitted on behalf of the plaintiffs that the house was not built according to the specifications; that all extra work had been paid for; and that the contractor had been fully paid.

When it was proposed to give the contract in evidence the plaintiffs objected to it, because "1. The whole contract was not offered, the specifications referred to in it, and made part of it, not being offered with the contract; 2. The whole contract was not recorded as required by the Act of Assembly, the specifications, being a part of the contract, not having been recorded; and 3. The contract was not properly recorded, having been recorded in a deed-book and not in a miscellaneous book." The paper was admitted, and a verdict directed for the defendants, the question whether the evidence was properly received being reserved by the court for subsequent consideration. Judgment was afterwards entered in favor of the plaintiffs, notwithstanding the verdict for the defendants. It would have been a more correct practice for the court to have directed a verdict for the plaintiffs. The defendants could then have moved for judgment in their favor *non obstante veredicto.* It was held in

[Glading *v*. Frick.]

Robinson *v*. Myers, 17 P. F. Smith 9, that a judgment could not be entered upon a reserved point for the plaintiff when the verdict was for the defendant, for the reason that such judgment would have no verdict to support it.   In the case in hand the admissions of record by the parties to some extent supply the place of a verdict, and it is possible the judgment might be sustained were there nothing else in the case.

Regard being had to the object of the defendants in offering the contract, it is not apparent how that object would have been promoted by accompanying it with proof of the specifications to which it referred.   The owner of a lot of land, and the contractor for the erection of a building on it, were the only parties by whom it had been executed.   The plaintiffs did not need the omitted evidence, for the accuracy of their books and the use of their materials for the purposes of the defendants had been admitted.   The defendants were invoking the protection of the Act of 1872, and proposed to show that the building had been erected under a written contract. Evidence is essential when its production is required to bring out the whole of the special subject of dispute.   If it bears upon the point in issue, it is relevant.   If the point in issue cannot be determined without it, then its absence is a defect fatal to the case of which it should form a part.   The question here was, whether Mr. Glading's house had been built under a written contract with Mr. Cassell.   The question of the compliance by either party with the specifications was between them alone.   They were a part of the contract by reference only, and their production could have added no strength to the proof of the principal fact involved.   They were not necessary to construe the contract, for the plaintiffs had no such interest as gave them the right to demand its construction.   They were not necessary to adjust equities or settle accounts, for they could have exhibited no equities and explained no accounts with which the plaintiffs could have had any concern.   The instrument was offered to establish the immunity of the defendants under the statute, and for that purpose the production of the specifications was not essential.

In the second place, it was objected that the contract was not "duly recorded," because the specifications were not placed on record.   The purpose of the legislature was to afford notice to mechanics and material-men of the existence of a written contract, which would bar their claims against a property on which a building should be erected, and leave them to such remedy against the contractor as they could enforce.   This purpose was adequately gained by the record of the contract without the specifications.   An inspection of the contract was all that was needed to show the existence of the specifications, which were referred to as being "in the possession of Solomon A. Kneedler."   Such a reference was enough to put all persons who could be interested upon inquiry.   While

[Glading *v.* Frick.]

they formed, as to the immediate parties, essential parts of the contract, they could have no bearing upon agreements into which other parties should afterwards enter. A peculiar state of facts ought to exist to make the recording of auxiliary documents like this indispensable. It is possible to conceive of specifications that would contain plans, drafts or models of a kind to render their transfer to the record impossible, or at least intolerably inconvenient. A contract could provide for the duplicate of a house already built. It might stipulate for the production of machinery identical with machinery already finished and in operation. And it would in either instance be an instrument no more complete in itself than this instrument. The rule that annuls the effect of an unrecorded agreement, which forms a part of a single transaction, has no room to operate in such a case as this. Friedley *v.* Hamilton, 17 S. & R. 70, and the line of cases following it, do not apply.

In the final objection to the admission of the contract in evidence, the ground was taken by the plaintiff that the record was defective because it was entered in one of the deed-books instead of the miscellaneous book, and Luch's Appeal, 8 Wright 519, was relied upon to sustain this position. The particular point decided in that case was that the record of a mortgage in any other than a "mortgage-book" was valueless and void as against a later lien; in other words, that in view of the immemorial usage under the statutes, a mortgage thus entered was not recorded at all. It is but just to the learned court below to say that it required no strain to bring this case within the spirit and reasoning of Luch's Appeal. A careful consideration of the subject, however, has led us to seriously doubt the soundness of the principles upon which Luch's Appeal was decided. No one of the present bench was a member of the court at the time that case was ruled, and we have hesitated in disturbing what appears to have been a unanimous decision of our predecessors. At the same time the practical difficulties of going any further in that direction are so palpable that we feel ourselves constrained to return to the rule laid down by Chief Justice GIBSON in McLanahan *v.* Reeside, 9 Watts 511. "It is, indeed," says the chief justice, "of no account that the conveyance and the articles were not recorded in the book set aside for mortgages. The keeping of such a book is an arrangement to promote the convenience of the officer by contracting the surface over which he is to search for a particular thing; and he is bound to furnish precise information, get it as he may, of every registry in his office, whether made in the right place or not." The instances are rare in which an Act of Assembly designates the book in which an instrument must be recorded. Where such direction is given in a statute its terms must be complied with or the record would be worthless. In many counties of the state the recorder classifies the papers brought to his office, and enters each in its appropriate book. This system has

[Glading *v.* Frick.]

grown up with the increase of business, and we presume has become very general throughout the Commonwealth. It is undoubtedly a great convenience to the recorder by "contracting the surface over which he is required to search," and if conducted with accuracy can injure no one. With this, however, the party depositing an instrument has nothing to do. In contemplation of law a paper is recorded the moment it is lodged in the office and the fees paid. In point of fact it may not be, and in many instances is not actually entered in the books until months afterwards. Where a man has complied with the law by depositing his papers in the recorder's office and paying the fees, it would be a hard rule that would deprive him of his lien or his estate because of an error of the recorder in recording the instrument in the wrong book. It would be different were there an Act of Assembly directing in what book the particular paper should be recorded. In such case the recorder might be liable upon his official bond for a failure to record as required by law. In the absence of any such act we are unable to see how we can declare that a paper is not recorded when the holder has done all that the Act of Assembly requires in placing it on record. To do so would seem very much like legislation.

We are not insensible to the force of the reasoning of Mr. Justice READ in Luch's Appeal. We think, however, that the argument *ab inconvenienti* would be more appropriate if addressed to the legislature. That body has ample power to correct the evil if one exists. In the city of Philadelphia, where, by reason of the large accumulation of books in the recorder's office, it was believed the application of the rule in Luch's Appeal was especially necessary, it is well known that both lawyers and conveyancers rely upon certificates of search. These the recorder is bound to give, and for their accuracy he is responsible. We presume he will continue to keep his books in such manner as to afford the greatest facilities for search. The labor and responsibility are his. If he records a paper in such a manner that he is liable to overlook it in making searches, he does so at his peril. We see no sufficient reason for the introduction of a rule the obvious effect of which is to lessen his responsibility.

There are many instruments which are authorized to be recorded by Act of Assembly that are not easy to classify. Such was the character of the paper in Luch's Appeal. It was held by this court to be a mortgage, yet it was not so in form. It required an astute lawyer to determine its legal effect. If we adhere to Luch's Appeal the holder of such instruments would not know whether they were recorded until the courts had passed upon their character. Such a rule is too uncertain, and cannot be continued without involving many innocent persons in loss and inconvenience. The application of it to the case in hand would be unjust. The contract was an instrument under seal. It was technically a deed. It is true it was not

[Glading *v.* Frick.]          *

a conveyance of land. But it was a contract relating to land. It was for the erection and construction of a house. The fact that it was recorded in a deed-book did not prejudice the plaintiffs. They had made no search and were not misled.

We are of opinion that the contract was properly received in evidence. It follows that it was error to enter judgment for the plaintiffs.

> The judgment is reversed, and judgment is now entered for the defendant upon the verdict.

Mr. Justice MERCUR filed a dissenting opinion.