# Prouty *v.* Marshall.

*Mortgage—Scire facias sur mortgage—Record—Prima facie case—Evidence.*

A scire facias upon a mortgage is founded on the instrument itself, not upon the record of it.

The production of a mortgage duly executed and acknowledged and having indorsed thereon the proper certificate of the recorder, followed by the proof of mortgagor's default in payment, the balance due and unpaid, and the terre-tenant's possession, constitutes a prima facia case for the plaintiff against the terre-tenant. It is not necessary for the plaintiff to produce in chief other evidence of the recording of the instrument, or of the date when it was left for record.

If a mortgage entitled to be recorded is left with the proper officer for that purpose, and the fees are paid, and is not withdrawn until there is indorsed thereon the recorder's certificate stating date of entry of record and the volume and page of the mortgage book, and there is nothing to show why the mortgagee should not rely upon such certificate, his lien will be protected against a subsequent purchaser without actual knowledge of its existence, although by mistake of the recorder or his clerk, the name of the mortgagor is not correctly transcribed in the mortgage book nor in the mortgage book index.

Argued Oct. 29, 1907. Appeal, No. 71, Oct. T., 1907, by A. A. LaRue, from judgment of C. P. Clearfield Co., Sept. T., 1906, No. 115, on verdict for plaintiff in case of Agnes Prouty *v.* L. J. Marshall and A. A. LaRue, terre-tenant. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Scire facias sur mortgage. Before A. O. SMITH, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in overruling motion of defendant for judgment non obstante veredicto on question of law reserved.

*A. L. Coyle,* with him *L. E. Boyer,* for appellant.

*W. C. Pentz,* with him *W. L. Calkins,* for appellee, cited: Glading v. Frick, 88 Pa. 460; Clader v. Thomas, 89 Pa. 343;

Wyoming Nat. Bank's App., 11 W. N. C. 567; Stockwell v. McHenry, 107 Pa. 237; Brown's App., 3 W. N. C. 35; Shebel v. Bryden, 114 Pa. 147; Brooke's App., 64 Pa. 127; Farabee v. McKerrihan, 172 Pa. 234; Schell v. Stein, 76 Pa. 398.

OPINION BY RICE, P. J., July 15, 1908:

The issue in this case was between a mortgagee seeking by scire facias to enforce payment of her mortgage and a terre-tenant, who, more than three years and one-half after the execution and delivery of the mortgage, bought the land from the mortgagor without actual knowledge of the existence of the mortgage. The case comes before us by appeal of the terre-tenant from the judgment upon the verdict directed in the plaintiff's favor for the unpaid balance of the mortgage debt; and the single. assignment of error is that the court erred in overruling the defendant's motion for judgment non obstante veredicto on the reserved questions. The reserved questions, as shown by the judge's charge, were first, "whether there is any evidence entitling the plaintiff to recover as against A. A. LaRue," the terre-tenant, secondly, whether under the law and the evidence the terre-tenant's point for binding instructions should have been affirmed.

It appears that L. J. Marshall executed and delivered to Agnes Prouty a mortgage, dated January 24, 1900, and duly acknowledged on February 5, following, to secure the payment of $1,375, the unpaid purchase money of certain described land in the borough of DuBois, which was conveyed by her to him by deed, of even date. A certificate, in these words, under the hand and official seal of the recorder of deeds, was indorsed on the mortgage: "Entered of record Feb. 6th, 1900, by W. C. Pentz. Fees paid $2.50. Recorded in the office for Recorder of Deeds in and for Clearfield County in Mortgage Book No. 7, page 421, etc. Witness my hand and seal of office this 6th day of Feby. Anno Domini, 1900." A scire facias upon a mortgage is founded on the instrument itself, not upon the record of it: Lancaster v. Smith, 67 Pa. 427; Tryon v. Munson, 77 Pa. 250; Michaelis v. Brawley, 109 Pa. 7. Hence the production of the mortgage duly executed and acknowledged, and

having indorsed thereon the foregoing certificate of the recorder, followed by proof of the mortgagor's default in payment, the balance due and unpaid, and the terre-tenant's possession, constituted a prima facie case for the plaintiff. It was not necessary for her to produce in chief other evidence of the recording of the instrument or of the date when it was left for record. In saying this we have not overlooked the case of Musser v. Hyde, 2 W. & S. 314, wherein it was held that if there is a dispute as to the date when a deed was left for record, the certificate indorsed on the deed of its having been recorded on a certain date, will not prevail over the short entry indorsed on the deed at the time of its receipt and the entry in the fair or entry book, which show it was left for record at a later date. But in the present case no such discrepancy appears. There being no evidence to impeach the recorder's certificate, so far as the date is concerned, it is to be presumed therefrom that the mortgage was left for record on or prior to the date of recording as certified by him, and this was more than three years and a half before the appellant bought. He put in evidence his deed dated in August, 1903, and testified that he had no knowledge at the time he bought and paid the purchase money of the existence of this mortgage; and as the burden of proving that he had such knowledge, if the case turned on that question, rested on the plaintiff, and as she offered no evidence upon the subject, the case is in the same situation as it would be if there were a distinct admission by the plaintiff that the terre-tenant was a bona fide purchaser without actual knowledge of the mortgage. Another point to be noticed in passing, is that he admitted that no search of the records was made by him or by anyone employed by him before he bought; hence it cannot be said that he was actually misled by them. Nevertheless, he was not precluded by that fact alone from setting up the defense upon which he relied, namely, that the mortgage was not so recorded as to make it constructive notice to subsequent purchasers or mortgagees. This defense was based on the testimony of the present recorder that no mortgage from L. J. Marshall was recorded in mortgage book 7 at page 421 (the book and page mentioned in the recorder's certificate

above quoted) and that the name of L. J. Marshall did not appear in the index of mortgages. But upon cross-examination the witness testified, having the index and the mortgage book before him at the time, that there was an index of a mortgage from S. J. Marshall to Agnes Prouty, for $1,375, on land located in DuBois borough, recorded in mortgage book 7 at page 421; also that in that book and at that page a mortgage was recorded in which the name of the mortgagee is given as S. J. Marshall, but corresponding in other particulars with the mortgage in suit. There is no room for doubt that this was intended to be a record of the mortgage in suit, and that in transcribing the mortgage the recorder or his clerk, by mistake, wrote the letter S as the mortgagor's first initial, where he should have written the letter L.

It is argued with great vigor by the appellant's counsel that if his client had made or had caused to be made a search for mortgages against L. J. Marshall, his vendor, he would not have found any; that such a record is valueless as notice to subsequent purchasers and mortgagees of the mortgage given by L. J. Marshall; and therefore they ought not to be affected by it. This is the position taken by the courts of some of the states of the Union. The principle upon which they go is well expressed by WRIGHT, J., in Miller v. Bradford, 12 Iowa, 14, where, speaking of the statutory provision that the deed shall be effectual to import notice from the time of depositing it for record with the recorder, he said: "This statute, in our opinion, was only intended to fix the time from which notice to subsequent purchasers was to commence, not to make such filing or depositing notice of the contents of the deed after the same was recorded. After the recording of the deed, the record itself is the constructive notice of its contents, and it never was the intention of the legislature to hold a subsequent purchaser, buying after the recording, bound by the contents of a deed, ever so improperly and incorrectly recorded, because at some time a deed correct in the description of the property was filed with the recorder." See also Terrell v. Andrew County, 44 Mo. 309, where the same doctrine is elaborately and vigorously expressed. There are other cases outside this state to the same

effect; that is, that the obligation of giving notice rests on the party holding the title, and that if his deed be so incorrectly transcribed in the record as to be valueless as notice, the loss, as between him and a subsequent innocent purchaser or mortgagee, must be borne by the former. But it has been said that in the majority of states, having statutes similar to ours, "the rule is favored by what seems to be the weight of authority that, when the grantee has duly deposited for record a valid instrument at the proper time, in the proper office and with the proper officer, he has performed his whole duty, and subsequent purchasers will be charged with constructive notice, notwithstanding the officer does not properly spread the instrument on the record book or fails to record it at all:" 24 Am. & Eng. Ency. of Law (2d ed.), 114. Pennsylvania is mentioned by this writer, as well as by other text-writers, as one of the states in which this is the rule, and before considering the decisions of the courts of other states it will be well to determine how far that statement is borne out by our statutes and decisions under them. By section 3 of the Act of May 28, 1715, 1 Sm. L. 94, the recorder is directed to certify, after he has recorded the deed, on the back thereof, under his hand and the seal of his office, the day he entered it, and the name and number of the docket or roll, and page where the same is entered. And by section 5 it is provided that all deeds and conveyances, proved or acknowledged and recorded as aforesaid, "which shall appear so to be, by endorsement made thereon," according to the true intent and meaning of this act, shall be of the same force and effect here, for the giving possession and seisin, and making good the title and assurance of the said land, as deeds of feoffment, with livery and seisin, or deeds enrolled in any of the King's courts of record at Westminster are or shall be in the kingdom of Great Britain. By the Act of March 28, 1820, 7 Sm. L. 303, mortgages have priority according to the date of recording the same, without regard to the time of making or executing such deeds; and it is the duty of the recorder to indorse the time upon the mortgage when left for record, and to number the same according to that time, and if two or more are left upon the same day they shall have priority according to the

time they are left for record; "and no mortgage or defeasible deed in the nature of a mortgage, shall be a lien until such mortgage or defeasible deed shall have been recorded, or left for record as aforesaid;" but the same section provides that a purchase money mortgage shall not be affected by this act, "if the same be recorded within sixty days from the execution thereof."

Passing Luch's Appeal, 44 Pa. 519, which was overruled in Glading v. Frick, 88 Pa. 460, the next case in chronological order is Speer v. Evans, 47 Pa. 141, wherein, as stated in the opinion, the only legal conclusion the record required the Supreme Court to declare was that actual is equivalent to constructive notice. But there is this dictum of Chief Justice WOODWARD: "As a guide to inquirers, the index is an indispensable part of the recording, and without it, the record affects no party with notice." This, however, was questioned in the later case of Schell v. Stein, infra, and was distinctly rejected as an adjudication of the question in Stockwell v. McHenry, 107 Pa. 237.

Brooke's Appeal, 64 Pa. 127, decided in 1870, arose out of a dispute between two mortgages. The case has an important bearing upon the case before us because, apart from the reasoning of the decision, it turned on the effect of the recorder's mistake in transcribing the acknowledgment of the first mortgage. In consequence of this mistake, it was made to appear by the record that the mortgage was acknowledged a month before it was executed. It was argued by appellant's counsel, upon the authority of Heister v. Fortner, 2 Binney, 40, and Solms v. McCulloch, 5 Pa. 473, and other cases, that the registry of a deed defectively proved or acknowledged is not constructive notice to a subsequent purchaser, and that, going by the record of the first mortgage, this principle was applicable. Justice READ, after summarizing the provisions of the act of 1820, said: "The mortgage therefore commences its record and its lien the moment it is left for record and is indorsed by the recorder, and entered upon the recorder's book, as required by the Act of May 18, 1775, 1 Sm. L. 422. It may remain there weeks and months, before it is actually recorded, and yet it is

record notice to all the world. A regular mortgage entitled to record is a record the moment it is left for record and so continues for all time to come: Musser v. Hyde, 2 W. & S. 314. We entertain no doubt that this record was notice to all the world, and the auditor has found that the appellant had also actual notice of the mortgage." Justice READ further distinguished Solms v. McCulloch, supra, by showing that there the original mortgage itself was dated after the acknowledgment, whereas in the case before him the defect was not in the acknowledgment, but in the transcribing of it in the mortgage book.

In Schell v. Stein, 76 Pa. 398, decided in 1874, the action was ejectment between a purchaser at sheriff's sale under a judgment upon a mortgage given by the owner in 1871, and the holder of a deed given by the owner in 1856, recorded in the same year in a certain deed book and entered in the index of that volume but not in the general index of deeds. The point decided was that the act of 1827 imposed no duty as to indexes, except to have one for each book. "But surely the one who has had his deed duly acknowledged or proved, recorded in the proper book, and certified under the hand and seal of office of the recorder in due form, has done all the law requires of him. On what principle of law or sound reason shall he be required to supervise the officer's gratuitous indexing of deeds in an index not required by law? He is not to be presumed to be familiar, and as a fact, nine out of ten persons are not familiar with the system of the office. All the citizen can be bound to know, is the law, and he is warned by no law that there must be kept a general index. Whether his title can be taken from him, by the omission to enter his recorded and certified deed in the particular index, may admit of question, but we give no opinion on this point."

Woods's and Brown's Appeal, 82 Pa. 116, decided in 1876, was an appeal from a decree distributing the proceeds of a sheriff's sale of land of John S. Bare. The dispute was between a mortgagee and subsequent judgment creditors. The mortgage was left for record and entered on the entry book on July 15, 1872, but was not transcribed in the mortgage book

until December 4, 1872, nor indexed until April 5, 1873. The judgment note of one of the appellants was given before the mortgage was transcribed, and the judgments in favor of both appellants were entered before it was indexed. The decree giving the mortgage precedence in the distribution was affirmed, upon the ground that no duty rests upon the mortgagee who has done what the law required of him "to supervise the actions of the recorder, and to see that he makes the record and indexes it immediately." The case is of little value in the determination of the precise question before us; for it only goes to the extent of holding that the lien which a mortgage acquires by being left for record (prior to the act of 1875) was not lost by the delay of the recorder in transcribing and indexing it.

Following the chronological order of the cases we now come to Glading v. Frick, 88 Pa. 460, decided in 1879. The precise question was whether a building contract had been "duly recorded in the office for recording deeds within fifteen days after the execution thereof." If it was, then under the act of April 3, 1872, the building and land were liable to the contractor alone for work done or materials furnished pursuant to the contract, and the plaintiff (not being the contractor) in the scire facias upon the mechanic's lien in question could not recover. It was shown that the contract was recorded in the deed book, and it was argued upon the authority of Luch's Appeal that this was not the proper book, and, therefore, the contract was not "duly recorded," and the defendant could not claim the benefits of the act. PAXSON, J., said: "The fact that it was recorded in a deed book did not prejudice the plaintiffs, they had made no search and were not misled." But the decision was not put on that ground (if it were it would fit this case exactly) but upon the broad ground thus stated: "In contemplation of law a paper is recorded the moment it is lodged in the office and the fees paid. In point of fact it may not be, and in many instances is not actually entered in the books until months afterwards. Where a man has complied with the law by depositing his papers in the recorder's office and paying the fees, it would be a hard rule that would deprive him of his lien or his estate because of an error of the

recorder in recording the instrument in the wrong book. It would be different were there an act of assembly directing in what book the particular paper should be recorded. In such case the recorder might be liable upon his official bond for a failure to record as required by law. In the absence of any such act we are unable to see how we can declare that a paper is not recorded when the holder has done all that the act of assembly requires in placing it on record. To do so would seem very much like legislation." This case is of particular importance in the decision of our case, not so much because the facts are similar, for they are not, but because in over-ruling Luch's Appeal, the court was called upon to declare the general principle controlling the same question we have before us, namely, what must the holder of a recordable instrument do in order to obtain the protection of the recording acts? Therefore, the foregoing utterances of the court upon that question cannot be regarded as mere obiter dicta, or as applicable only to building contracts. Besides that, the case has been uniformly followed and repeatedly cited in later decisions.

Wyoming National Bank's Appeal, 11 W. N. C. 567, decided in 1882, involved a controversy between a mortgagee and a judgment creditor of the mortgagor, whose judgment was for an indebtedness incurred prior to the execution of the mortgage. The mortgage was left for record May 2, 1873, which it will be noticed was prior to the act of 1875, but was not actually transcribed until six weeks after; nor was there in the meantime any entry made in the entry book or any other book; nor was it indexed until 1879. It was held on distribution of the fund realized from an orphans' court sale that the mortgage was entitled to precedence over a judgment entered in 1878. As to what the effect of the failure to enter the mortgage in the entry book would have been in the case of a lien intervening between that time and the recording of the mortgage, the court declined to express an opinion; but it is very evident from the opinion that the omission to enter the deed or mortgage in the entry book is not under all circumstances fatal to the recording of the instrument.

In Clader v. Thomas, 89 Pa. 343, decided in 1879, the defendant in the action of ejectment claimed under a deed for the iron ore in the premises, dated in 1862, recorded in the miscellaneous book, but not recorded or indexed in any deed or mortgage book. The plaintiff claimed under an orphans' court sale of the entire premises made in 1868. The court referring to Luch's Appeal said: "that case, however, has been since overruled, and it is now settled that a deed is in contemplation of law recorded when it is left for record in the recorder's office, and the record cannot be lost by being transcribed by the recorder or his clerk in the wrong book. . . . There was sufficient to affect the purchaser (at the orphans' court sale) with notice of Thomas's title by the record, without having recourse to notice at the sale."

Paige v. Wheeler, 92 Pa. 282, decided in 1880, arose out of the recording of a defeasance in the agreement book instead of the mortgage book. The point decided and the facts out of which the controversy arose are concisely stated in the following excerpt from the opinion of Justice MERCUR: "Cooper, one of the plaintiffs in error, claims title by virtue of his purchase at sheriff's sale as the property of his co-plaintiff, Paige. The judgment on which it was sold was entered after the deed from Paige to the defendant in error and after the contract of defeasance were recorded. Inasmuch, however, as the defeasance was not recorded in the mortgage book, but in the agreement book, it is claimed that it was improperly recorded, and, therefore, if in fact a mortgage, the sheriff's sale passed a title discharged therefrom. It may be conceded that this was the correct view under the authority of Luch's Appeal, 44 Pa. 519. That case, however, has been expressly overruled by Glading v. Frick, 88 Pa. 460. It is there held that such an instrument of writing is properly recorded in any book kept by the recorder of deeds. Cooper then bought subject to the claim of the defendant in error, conceding the conveyance to have been a mortgage. If a mortgage, the latter can recover no more than the sum loaned, which it was given to secure, with legal interest thereon."

Shebel v. Bryden, 114 Pa. 147, decided in 1886, recognized,

although it did not turn exclusively upon, the legal proposition that if an assignment for benefit of creditors is "left to be recorded" within thirty days from its execution, it is sufficient, even though it was only transcribed and indexed in the limited partnership book, and was not indexed in the deed book index until several months after. "This," said Justice STERRETT, "did not invalidate the recording of the instrument. In contemplation of law it was recorded and took effect from the time it was left with the recorder for the purpose of being recorded."

Stockwell v. McHenry, 107 Pa. 237, which, though decided by the Supreme Court in 1884, related to an instrument recorded in 1865, and therefore the indexing act of 1875 did not apply. It was held: first, that the legal effect of the incorporation of a company under the act of 1854 was to vest in the corporation the title to all the lands in the certificate described without any further conveyance or assignment; secondly, that although the act provided that the certificate should be "recorded in the office for recording of deeds . . . . in a suitable book to be kept for that purpose," it was not necessary that the names of the individual corporators named in the certificate be indexed in the recorder's office in order to make the conveyance effective as against a mortgage subsequently given by two of the corporators upon their undivided interests. The opinion of Justice CLARK so clearly states the duty, and its limits, of the grantee in a deed or mortgage in order to protect his title or his lien against subsequent purchasers and mortgagees that we quote from it at length. He says: "Assuming, therefore, that the certificate was in the nature of a conveyance, and that a proper indexing required that the names of the corporators contributing the land should be placed with the grantors, it does not follow that the failure of the recorder so to do invalidated the record. Prior to the act of March 18, 1875, at least, it was well settled, that a deed was in contemplation of law recorded when it was left in the recorder's office and put upon the entry book for that purpose. . . . No duty rested upon the Forest County Oil and Mining Company, to supervise the action of the recorder, to see that he made the

record and indexed the conveyance: Brown's & Wood's Appeal, 3 W. N. C. 35; Wyoming Nat. Bank's Appeal, 11 W. N. C. 567. Constructive notice of the conveyance must, therefore, be imputed to the holder of the Stockwell mortgage, as well as to those claiming under it; that notice being the implication which the law attaches to the registration of the certificate."

There remains to be noticed one other case, Farabee v. McKerrihan, 172 Pa. 234. McKerrihan gave a mortgage to Farrabee, which was recorded in the deed book and indexed in the deed book index, instead of the mortgage book. It seems not to have been entered in the fair or entry book. On the distribution of the proceeds of sheriff's sale of the land it was held that the mortgage was entitled to precedence over subsequent judgment liens. The case is valuable in the determination of the question before us, because Justice GREEN, speaking for the court, after an elaborate review of all the earlier cases, declared the law to be "that when the holder of an instrument to be recorded has left it with the recorder to be recorded, it is to be regarded as actually recorded, from that time, whether it was actually recorded at that time or not, or whether it was recorded in the wrong book." The decision is particularly valuable also because it is the first case which discussed and determined the effect and applicability of the act of March 18, 1875. Justice GREEN says: "But it is urged that the Act of March 18, 1875, P. L. 32, in effect changes the law upon this subject as it was prior to its passage, and that under that act all mortgages must be recorded in mortgage books and indexed in mortgage indexes, in order to constitute notice to subsequent purchasers and incumbrancers." Then after summarizing the provisions of the act he proceeds: "This act contains no repeal of any of the prior legislation of the state nor is it inconsistent with any part of it. It did not assume to create any new rule of constructive notice of recorded instruments. The Act of March 28, 1820, 7 Sm. L. 303, provides that mortgages left for record shall be liens from the time they are recorded or left for record, and the contention of the appellants would practically destroy that part of this act which gives the same effect to being left for record as to being actually re-

corded." Then after referring to Wyoming National Bank's Appeal he said: "It is no answer to this or any of the cases heretofore cited to say that they were decided either before the act of 1875 was passed, or upon facts arising prior to its passage, because that act is not in conflict with them." What follows in the opinion does not impair the controlling effect of these utterances as a construction of the act of 1875.

Undoubtedly individual cases of hardship have arisen and will arise under the rule contended for by the appellee's counsel. So there would under the rule contended for by the appellant's counsel. But, in view of the foregoing decisions, it is impossible to see how a grantee in a deed or in a mortgage can be expected to do more to protect his title or his lien against subsequent purchasers and mortgagees than the appellee did in the present case. If it be said that before removing her mortgage from the recorder's office she ought to have taken pains to see that it was duly recorded, the answer is, and under the Pennsylvania decisions it seems to be a conclusive answer, that she did not remove her mortgage until there was indorsed upon it the certificate, in the form prescribed by the statute, of the keeper of the record, who was authorized to make it, that the mortgage was duly recorded. As a result of a thorough examination of the decisions we conclude that if a mortgage, entitled to be recorded, is left with the proper officer for that purpose, and the fees are paid, and is not withdrawn until there is indorsed thereon the recorder's certificate as above stated, and there is nothing to show why he should not rely upon that certificate, his lien will be protected against a subsequent purchaser without actual knowledge of its existence, although by a mistake of the recorder or his clerk, the name of the mortgagor is not correctly transcribed in the mortgage book or in the mortgage book index.

In the opinion of the learned judge below, there appears this sentence: "The writing of the scrivener of this mortgage undoubtedly misled the recorder." The learned counsel for the appellant makes the point that if that be the fact the loss ought to fall upon the mortgagee instead of upon the subsequent purchaser. This may be true, but the quoted remark

does not contain a full statement of what the learned judge thought the mortgages showed, because he goes on to say "but the signature of L. J. Marshall as also the acknowledgment in the handwriting of the notary public is just as unquestionably an L and should have put the recorder on inquiry as to whether he was properly recording it." This puts quite a different aspect upon the matter and in that aspect the recorder ought not to have been misled. If he had recorded and indexed the instrument precisely as, perhaps, he was justified in thinking it read and was executed and acknowledged, his record and .index would have shown beyond all question that it was the mortgage of L. J. Marshall. We are of opinion that there was no question of negligence on the part of the mortgagee to be submitted to the jury; and even if there were, it is difficult to see how the appellant could sustain his single assignment of error, namely, that the court erred in not entering judgment in his favor.

The judgment is affirmed.