Wilson & Anderson to Use First National Bank of Clarion, Pa., now to Use of J. H. Wilson, Appellant, v. M. Arnold.

*Execution—Confessed judgment—Waiver of exemption—Duty of prothonotary to inspect record—Testatum fi. fa.—Negligence.*

When the prothonotary is directed to issue a testatum fieri facias it is his duty to inspect the record of the plaintiff's judgment and see that the writ conforms thereto in every material particular. If he neglects to do so and in consequence thereof any part of the claim is lost, he is liable to respond in damages to the extent of the plaintiff's loss.

Where a judgment note contains a waiver of exemption, and the prothonotary in issuing an alias testatum fieri facias upon the judgment entered on the note, neglects to note in the writ such waiver, and the defendant claims the exemption, and nothing is made on the execution, the prothonotary is liable to the plaintiff for the loss.

Argued Oct. 8, 1895. Appeal, No. 75, Oct. T., 1895, by J. H. Wilson, the use plaintiff, from judgment of C. P. Clarion Co., Jan. T., 1885, No. 17, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Trespass against the prothonotary for negligence in issuing a writ of alias testatum fieri facias. Before WHITE, P. J., of the 40th judicial district, specially presiding.

The court charged as follows:

This is an action brought by Wilson & Anderson to the use of the First National Bank of Clarion, now for the use of J. H. Wilson against M. Arnold. It is the effort of the plaintiff to charge Mr. Arnold, the defendant, for responsibility to the amount of the debt, interest and costs of a certain judgment entered in this court in favor of the present plaintiff here against F. A. Read and W. C. Duff.

So that you may understand it exactly, it appears there is a judgment entered in this court in favor of the present plaintiffs against Read & Duff for the sum of $101.74 with costs. It appears the defendants were residents of Clearfield county. It appears further that an execution fi. fa. was issued in this county to which there was a return of nulla bona. Immedi-

ately thereafter at the suggestion of the plaintiff there was a testatum fi. fa. sent to Clearfield county. This is the technical name, gentlemen, of a writ that issues from one county under the authority of law to another, where it is claimed by the plaintiff that the defendant in the judgment owned property that would be liable for execution and collection on the judgment. A testatum fi. fa. was accordingly issued.

We should remark that the judgment on which this execution was issued was upon a note with warrant of attorney to enter judgment thereon, which authorized the waiver of the exemption that the laws of the commonwealth allow to all debtors, and also contained, we believe, a waiver of inquisition, the right of having inquisition held upon real estate levied on. The first execution seems to have indorsed upon it a statement by the prothonotary of a waiver of this exemption. This first testatum fi. fa. was returned nulla bona. The second execution was returned (which should be an alias—not material) ; was issued at the suggestion of the plaintiff again to Clearfield county. On this second testatum fi. fa. there appeared to be no indorsement by the prothonotary of a waiver of the exemption.

By the subsequent proceedings upon that writ it appears the defendant Read made claim for the benefit of the exemption allowed by the act of 1849, in consequence of which the regular proceedings were had by the sheriff of an appraisement and the allowance of the retention of the property that was appraised thereon by the defendant, the amount of the appraisement appearing to be $242. As to the other defendant, W. C. Duff, there was a return of no property.

This testatum fi. fa. seems to have been issued on the 25th of October, 1878, and was returnable to the following December. It seems to have been received in Clearfield county on the 30th of October and the execution was returned in the following November, with the statements on it we have indicated. The matter remained so until the following May, when a pluries testatum fi. fa. was sent to Clearfield county, with the return of no property.

Under this state of facts the plaintiff offered further evidence to the effect that he was in Clearfield county, just prior to the issuing of this second testatum fi. fa., and saw defendant Read in the ownership and possession of certain property, for which

he begàn some negotiations. Failing to get any satisfaction from the defendant about them or about the payment of this judgment he telegraphed home here and had a writ issued. ' He is not clear whether he telegraphed to the attorney or to the prothonotary himself. This is the first time for the first writ. The second writ seems to have been issued by the attorney— at the instance of the attorney of the plaintiff. The plaintiff testified that during the time of the pendency of that writ the defendant Read was in possession of property sufficient to have paid the writ, and by the appraisement that was held as returned by the sheriff to the writ this would appear to be the case.

We will repeat again, with this state of facts the plaintiff contends and thus brought this action to recover from the defendant, that the defendant is responsible for the amount of this execution because he negligently failed to indorse upon this execution the statement that the judgment waived the benefit of exemption. This raises, gentlemen, at the threshold of the case a question of law—a question of practice in such cases, and it is necessary for this court to decide, which decision is binding upon you, whether it was the duty of the prothonotary, under the circumstances of this case in the absence of any evidence before us of special direction of the plaintiff or his attorney to him, to make such indorsement. If it was the duty of the prothonotary to make such indorsement upon the writ, and you would find that such failure to indorse caused the loss of the collection of the judgment in that writ, then the defendant would be responsible to the plaintiff for such negligence.

These actions are not brought because of any fraud or bad conduct of the public officer, this is not predicated upon such an allegation ; it is predicated of a failure of the officer to discharge his duty—all features of his duty with a respect to the particular matter as it should have been ; to apply to its discharge that vigilance, and care, and perfection of performance that the law requires. It is very well said by one of our judges in our early books that officers are created for the benefit of the community, not for the emolument of the individual, and that every public officer ought to know his duty and exercise it with fidelity, or he will become responsible to the party aggrieved. To perform his duty with fidelity is the test of responsibility, in cases like this where negligence is charged against the officer.

The office of prothonotary is an ancient one; it comes to us in this country from that country whence we derive so many of our laws; we believe he was the chief officer of the court of kings bench, chief clerk, the chief notary, we think some of the books say the chief shorthand writer, for they seem to have had such devices and inventions in that early day. He is the officer of the court, the clerk of the court who writes its decrees and enters its judgments and issues its processes. We have by an act of 1834 and kindred acts, specified duties defined. Of course, for the violation of those statutory specified duties and consequent damage the officer is responsible in court in actions at law. You will observe the charge here is that he failed to make the indorsement upon the writ of waiver—that the note contained a waiver of the benefit of the exemption. There is no statutory requirement on the officer to make this indorsement; it is not specifically so written in the law; but because of the duty of the officer to discharge his duty with fidelity it is alleged by the plaintiff here that the failure to make this indorsement was a disregard of that obligation, neglect of that fidelity in that respect, that the nature of the duties of his office required. Now, how is that? We are to decide it.

Judge SARGENT in the case of McCarraher against the commonwealth very properly defines or established a rule on this subject. "What then," says he, "are the duties annexed by law to any office which the officer thus undertakes to discharge faithfully? A solution of this question must result, I think, from a consideration of what constitutes essential or vital parts of it, for thus much at least may be said, that whatever constitutes an essential or vital part of the office, so that without it the design and object of the office cannot be attained, must necessarily be ranked amongst the duties which the officer is bound to fulfill; and as the character and design of different offices are different the duties of the officer vary accordingly." Then some comments are added by the court.

This in general indicates the duties we are to expect to be performed faithfully by a prothonotary—those things which are necessary and vital to the discharge of the particular duty that he is performing, and in this particular case the discharge of all the duties involved by the issuing of a writ of execution. It is necessary for the officer to obey the request of the attorney

or plaintiff personally to issue the execution, and the execution must follow the judgment. Whether it must follow it in all its various incidents and complicities, if it has such, we are not now deciding as an abstract question, we will meet the specific question that is before us; we think as a general principle, however, that he is not required to decide the delicate questions that may arise upon the face of the judgment; there are certain plain duties, however, that experience and practice, sanctioned by the utterance of our higher court, unquestionably require him to perform. He is required to place certain indorsements upon that writ. What are they? And those indorsements when so made are controlling upon the sheriff even as against the recitals in the body of the writ itself; and when there is a variance between such indorsements as practices sanctioned and required him to make upon the back of the writ and the body of the writ, the recitals are controlling on the officer, and upon complaint made against the sheriff the indorsement upon the writ will be a protection to him.

What are these indorsements? He is required to state the names of the parties upon the back of the writ, the amount of the judgment, the date from which it bore interest, and the amount of costs that are entered on the record, so that the sheriff may know what amount is to be collected from the defendant. These are very plain duties enjoined upon the prothonotary and they are official, and he is expected to perform them faithfully and correctly. Is it the duty of the prothonotary to go further, and where a judgment has been entered waiving the benefit of the exemption that the law applies to all ordinary contracts, is it his duty of his own motion to enter that waiver on the back of the writ as one of the required indorsements?

First impressions rather led our minds to the inclination that he was, and more careful thought and investigation about what indorsements the practices of our courts have required has led our minds to a different conclusion, and [we do not think it is the duty of the prothonotary in all cases, of his own motion, without further direction by the plaintiff, under the penalty of being responsible for any damages that may result in consequence of the failure to make that indorsement, for him to make such indorsement without the direction of the plaintiff or his

attorney to do so.] [1]   We find no authority in Pennsylvania upon this question.   We do not know that the question as presented here against the prothonotary has ever been tried before in this commonwealth.

The act of 1849 was the act that allowed exemptions in lieu of all other exemptions, and it was for a while debated whether that could be waived or not.   Our Supreme Court, however, for sufficient reason to themselves, intimating occasionally regrets since however, have decided that the waiver, when supported by sufficient consideration between the parties, or if made at the time of the original contract, that results in the written evidence of the debt, if the waiver was made then or upon sufficient consideration, we repeat it is good between the parties and a judgment can be collected, notwithstanding the defendant may make claim against it for the benefit of the exemption ; the officer, the sheriff, is not bound to regard it if the defendant has waived it.

The general rule however is, the act of 1849 being a general law, that all contracts are subject to its provisions, and a contract made waiving its provisions is an exception to the general law ; and if the plaintiffs knowing this fact, that the contract waives the benefit of the exemption, desires the officer to proceed and enforce it according to its terms and to have the statement accompany the writ of execution, we think it is his duty to so indicate to the clerk of the court or the prothonotary in issuing the execution.

[We find cases where it is decided by our courts that the indorsement of the waiver of exemption upon the back of the execution is proper and will be sanctioned and has been sanctioned when attention has been called to it by the defendant, complaining of its being improperly there ; yet nowhere do we find that it is obligatory upon the prothonotary of his own motion when called upon to issue an execution by a præcipe, to make such indorsement upon the back of the writ.   It is quite true that that practice has obtained throughout the commonwealth, and ordinarily we find on the back of the writs issued upon executions waiving the benefit of the exemption such indorsements ; but when the prothonotary is sought to be held responsible for alleged losses due the plaintiff because of the failure of an indorsement of that kind upon the writ, we

think it is necessary for plaintiff to go further and show that the prothonotary failed to make such indorsement in disregard of the request of the plaintiff to do so, and there is no evidence in this case that the plaintiff requested him by himself or by his attorney to make an indorsement of that kind or to accompany the execution with a statement for the guidance of the sheriff that the original judgment waived the benefit of the exemption.

On this view of the case then we think in the absence of such evidence the plaintiff cannot recover here,] [2] for the only claim is that the defendant is responsible for the loss alleged because he did not, as a matter of course, when he issued the execution indorse it upon the writ. We do not for the reason stated think this is sufficient to charge him with negligence. We find it decided somewhere that an indorsement by a justice of the peace upon an execution of a waiver of exemption, when it was unauthorized and when it really was not in the instrument creating the debt waived, will not deprive the defendant of the benefit of his exemption, or his right of complaint at law against the officer for disregarding his claim. Now that is the opposite of this. Here the complaint is that the officer is responsible for not making the indorsement; it is the converse of the other ; and the failure of the officer to make such indorsement when he issues a writ does not of itself deprive the plaintiff of his right to have it followed with a statement or a certificate from the officer that such waiver is contained in the original paper; so that the right of exemption being a general and statutory one, the waiver of this exemption being the result of only a special agreement or a special contract, we think probably it would be holding the officer to too strict a line of duty to require him to decide whether the judgment itself in the absence of any suggestion from the plaintiff actually contained a waiver or not.

If it is contended by the plaintiff that it does contain a waiver, and the execution is issued without a memorandum upon the face of it that it does so contain, it is in the power of the plaintiff by suggestion in the office or by application to the court or at chambers to have the correction made ; consequently we think this is the safer rule, and we will only hold the prothonotary responsible for the neglect of such duties as seem to be well

established by the practice of our courts and vital and necessary in the proper discharge of the duties of his office, among which, however, we do not find the statement of an indorsement on the back of the writ of a waiver of the benefit of the exemption.

Plaintiff's points were as follows :

1. If the defendants or either of them in the writ issued October 25, 1878, had sufficient property out of which the plaintiff could have made his money, had the defendant in this action noted the waiver of exemption on said writ as contained in the judgment, and the plaintiff failed to make his money by reason of such omission, the verdict of the jury should be for plaintiff the amount that could have been made with interest to date. *Answer :* Did we have evidence here such as we have indicated, that the defendant failed to make such indorsement on the request of the plaintiff under the circumstances of this case, we think it would be such negligence as would make him responsible under the principles indicated in this point. There being no evidence of any suggestion to him by the plaintiff to make such indorsement, and under the principles stated in our general charge this point is refused. [4]

2. That the plaintiff was under no obligation to issue a second writ, and the failure of the plaintiff to issue such writ would not relieve the defendant from his liability insured on the first writ; and if the jury believe from the evidence that the money could have been made on the first writ the verdict of the jury should be for the plaintiff. *Answer :* That states the law and the practice correctly, if we had the necessary facts to create negligence of the officer in this case. Under the view we take of it as expressed in our general charge, we refuse it. [5]

Defendant's point was:

1. On the whole evidence the verdict must be for the defendant. *Answer :* Affirmed. [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*W. A. Hindman, W. H. Hockman, H. R. Wilson* and *C. Z. Gordon* with him, for appellant.—The judgment in this case was entered upon a confession of judgment by attorney, and contained the waiver of the benefit of the exemption, and it

was set forth upon the docket the same as the amount of the debt, interest and cost, and formed a part of the judgment: Hageman v. Salisberry, 74 Pa. 280.

The issue of an execution by the prothonotary is an official act, pertaining to his office, and for which the law gives him a fee. He is bound to perform it faithfully: Van Etten v. Com., 102 Pa. 596.

It is the practice throughout the state for the prothonotary when he issues an execution upon a judgment which contains the waivers, to indorse said waivers upon the said execution. And it was the practice in Clarion county as shown by the two prior writs in this same case.

This is now the practice throughout the state, and therefore it is a duty attached to the office: Saylor v. Com., 5 Atl. Rep. 227.

Where the prothonotary had entered in the judgment docket a less amount than the judgment, Justice RODGERS, in delivering the opinion of the court, said : " It is said to be hard that the plaintiff should suffer by the mistake of the prothonotary, but if he has been injured by the office, he has his remedy : " Crutcher v. Com., 6 Whart. 340.

If the prior lien creditors shall sustain a loss in such case by reason of the negligence or mistake of the prothonotary, the latter must be responsible for it, and make it good: Bear v. Patterson, 3 W. & S. 237 ; Ridgway, Budd & Co.'s App., 15 Pa. 177.

The sureties of a prothonotary are liable for damages incurred by a purchase of land, through a mistake in the certificate of judgments ; and it is immaterial that there is no proof of the payment of the fee : Ziegler v. Com., 12 Pa. 227 ; Work v. Hoofnagle, 1 Yeates, 506 ; Mann's App., 1 Pa. 24.

The erroneous satisfaction of a judgment by a prothonotary in the judgment docket, by a mere mistake, is such a breach of his official duty as will make him and his sureties liable, in an action on his official bond for such damages as an innocent plaintiff may have sustained by reason of his relying on the truthfulness of said party: Van Etten v. Com., 102 Pa. 596.

*B. J. Reid, W. H. Ross* and *F. J. Maffett* with him, for appellee.—The duty alleged in this case was not enjoined by the

exemption law of 1849, but it is claimed that since the passage of that act and the decisions under it holding that a debtor may validly waive its benefits when the debt is contracted, a practice has sprung up and has become pretty general throughout the state for the prothonotaries to indorse a memorandum of such waiver on fi. fas. There was no evidence in this case of the existence of such a practice, and we deny that it was so universal and of such long standing that a court could take judicial notice of it.

For aught that appears the waiver of exemption may have been indorsed on the previous writs at the special request of the plaintiff's attorneys; and that may be a part of the alleged practice of such waivers being indorsed on writs: Bowyer's App., 21 Pa. 215; Case v. Dunmore, 23 Pa. 93.

What a prothonotary was required to indorse on a fi. fa. was determined by common law or by old English Statutes in force before we had any statute law in this colony. His duties being thus fixed, were vital, essential and obligatory without any modern statute prescribing them, and his failure to perform them rightly would no doubt subject him to an action. Neither statute nor long and well established custom imposed on this officer the duty, of his own motion, to make the indorsement in question here: McCaraher v. Com., 5 W. &. S. 25; Com. v. Conard, 1 Rawle, 249; Hope v. Everhart, 70 Pa. 234.

The authorities cited in appellant's paper-book do not touch the question.

Hageman v. Salisberry, 74 Pa. 280, relates to a waiver of inquisition contained in the warrant, and all that it decided is that when judgment was confessed on such a warrant, showing " waiver of inquisition and condemnation," such waiver became part of the judgment, and a sale thereon without inquisition passed a good title.

In Van Etten v. Com., 102 Pa. 596, the prothonotary was properly held liable for erroneously making a judgment satisfied, whereby the plaintiff suffered loss. That was not a case of nonfeasance but of misfeasance,—the doing of an official act without any authority to the prejudice of the plaintiff.

The expression quoted against us, " that is now the practice throughout the state, and therefore it is a duty attached to the office," refers to a very different kind of practice from the one

attempted to be set up here.    It refers to the universal practice, recognized and sanctioned by the English courts and our Supreme Court for more than two centuries, of referring to prothonotaries the liquidation of judgments by default when assessment of damages was merely a matter of calculation : Holdipp v. Otway, 2 Saund. 106 ; Rashleigh v. Salmon, 1 H. Bl. 252 ; Andrews v. Blake, 1 H. Bl. 529 ; Longman v. Fenn, 1 H. Bl. 541; Watkins v. Phillips, 2 Wh. 209; Bank v. Thayer, 2 W. & S. 443 ; Noble v. Laley, 50 Pa. 284.

Crutcher v. Com., 6 Wh. 340 ; Bear v. Patterson, 3 W. & S. 237, and Ridgeway's App., 15 Pa. 177, were cases of misfeasance by erroneous entries in the judgment index.

In Mann's App., 1 Pa. 24, the prothonotary wholly omitted to enter the judgment in the judgment index.

Work v. Hoofnagle, 1 Yeates, 506, and Ziegler v. Com., 12 Pa. 227, were cases of false certificates given by prothonotaries.

But even if the making of the indorsement in question here were a duty imposed by law, there could be no recovery under the undisputed evidence, since the plaintiff, or his counsel, by the exercise of ordinary care and vigilance could have avoided the resulting loss : Simpson v. Hand, 6 Whart. 311 ; D. & L. R. R. v. Cadow, 120 Pa. 559; Wharton on Negl. sec. 343 ; Franklin v. Smith, 21 Wend. 624.

Opinion by Mr. Chief Justice Sterrett, January 6, 1896 :

When the defendant, as prothonotary of the court of common pleas of Clarion county, was directed to issue the alias (improperly called " pluries " ) testatum fieri facias in question, it was manifestly his duty to inspect the record of plaintiff's judgment and see that the writ conformed thereto in every material particular.    If he neglected to do so and in consequence thereof any part of the claim was lost, he is liable to respond in damages to the extent of plaintiff's loss.    As shown by the record the judgment was regularly entered " by virtue of a warrant of attorney . . . . for the sum of one hundred and one $\frac{74}{100}$ dollars, with interest, from May 31st, 1875, with costs of suit, release of errors, without stay of execution, and waiving exemption and inquisition."    The concluding waivers of " exemption and inquisition " are important features of the

judgment, and should clearly appear in the body of the writ or by indorsement thereon, so that the sheriff charged with its execution may be fully advised that the defendant has waived his right to claim the benefit of the exemption law, and has consented to the condemnation of any real estate that may be taken in execution for the purpose of satisfying the judgment. In Hageman v. Salisberry, 74 Pa. 280, it was held that the terms and conditions of a confessed judgment, including waiver of inquisition and exemption, enter into and form a part of the judgment, modifying and qualifying its effect. That being so, it follows as a matter of course that on issuing execution process on such judgment, it is the duty of the prothonotary to follow the record thereof and not only recite or note the amount of the judgment, etc., but also its terms and conditions so far as the proper execution of the process may be affected thereby.

The fieri facias to the sheriff of Clarion county, and the testatum fieri facias to Clearfield county, both of which were returned nulla bona, were properly indorsed, respectively: ".Waivers, waiving exemption and inquisition," and " waiving stay of execution, exemption and inquisition:" but, when the defendant came to issue the alias testatum in question, he neglected to note, in any form, the waiver of exemption and inquisition which so plainly appears upon the record of the judgment.

The result of this was that when the sheriff levied on personal property of one of the defendants more than sufficient to have satisfied the judgment, debt, interest and costs, the defendant claimed the benefit of the $300, exemption, and the property was accordingly appraised and all set apart to him under his claim. Nothing was realized on the execution.

The testimony tended to show, and the jury would have been justified in finding as a fact, that plaintiff's claim was lost in consequence of defendant's neglect to indorse the waiver of exemption on the writ.

It follows from what has been said, that the court erred in charging as complained of in the first three specifications, and in not affirming plaintiff's first and second points recited in the fourth and fifth specifications.

Judgment reversed and venire facias de novo awarded.