Commonwealth to the use of Orris *v.* Roberts
et al., Appellants.

Argued October 4, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*William H. Eckert,* with him *Ralph H. Smith, Jr., Roderick G. Norris* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for individual defendant, appellant.

*J. M. McCandless,* for defendant surety company.

*Julius J. Lorenzi,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, May 2, 1958:

This action in assumpsit was instituted in the name of the Commonwealth to the use of Pete Orris against David B. Roberts and the Continental Casualty Company, as surety on Roberts' fidelity bond as prothonotary of Allegheny County, to recover damages suffered by the use-plaintiff through the negligence of a clerk in the prothonotary's office.

The defendants filed preliminary objections to the complaint setting forth, in effect, that the doctrine of *respondeat superior* is not applicable to Roberts in his capacity as prothonotary and that, under the facts of this case, there is no liability on him and the defendant surety under his official bond. The court sustained the preliminary objections and entered judgment for the defendants. The plaintiff appealed to the Superior Court which reversed and entered judgment for the plaintiff on the ground that he had a cause of action against Roberts on the principle of *respondeat superior* and that, consequently, the Casualty Company was also liable under the terms of its surety bond. Because of the general importance of the question involved, we granted an allocatur.

The facts are not in dispute. Pete Orris, the use-plaintiff, received from Edith M. Whitaker, her judgment note for $800. Orris' attorney delivered the note to the cashier (receiving clerk) in the office of the

prothonotary of Allegheny County for the purpose of having the note entered of record as a judgment. The cashier, in regular course, handed the note to the clerk in the prothonotary's office whose duty it was to index judgments. The clerk is an employee of the County of Allegheny allocated to the prothonotary's office. Under the "Russell Index System" which is used in the prothonotary's office for the indexing of judgments, Orris' judgment against Whitaker should have been indexed under the key letters "TR". Instead, it was improperly indexed under the key letter "T" alone. The complaint does not aver that the prothonotary ordered or directed the manner of indexing the note or had any knowledge of it. Had the judgment been properly indexed, it would have been a lien on property in Allegheny County which Miss Whitaker, the debtor, owned at the time of the filing of the note for entry but which she subsequently sold and conveyed to a third person for a consideration of $11,000 before the error in the indexing of Orris' judgment was detected and corrected. As a consequence, Orris has not been able to collect on his judgment against Whitaker.

The Superior Court based its action on the conclusion that "the exercise of control in the assignment of duties, and the supervision of the work amongst subordinates renders the prothonotary liable for the negligence of his employees in the performance of their duties even under the theory of 'respondeat superior'" and held that, since "the prothonotary is liable for the default of his clerk in the instant proceeding, it follows that the surety on his bond is also liable." The Superior Court's decision is in error in both particulars.

The rule in Pennsylvania, as well as in other jurisdictions, is that a public officer is not liable for the negligence of his official subordinates unless he com-

manded the negligent act to be done. This principle and its rationale were graphically set forth in *Boyd v. The Insurance Patrol of Philadelphia*, 113 Pa. 269, 278, 6 A. 536, where this court said: "It is true also, as a general rule, that a public officer is not liable for the negligence of his official subordinates, unless he commanded the negligent act to be done: Schroyer v. Lynch, 8 Watts 453; the rule is founded in considerations of public policy (Sawyer v. Corse, 17 Grat. 230) has been long recognized, and is one of general application. 'The distinction generally turns upon the question whether the persons employed are his servants, employed voluntarily or privately, paid by him and responsible to him, or whether they are his official subordinates, nominated perhaps by him, but officers of the government; in other words, whether the situation of the inferior is that of a public officer or a private servant.' In the former case the official superior is not liable for the inferior's acts, in the latter he is: American Lead. Cases 641. A subordinate officer, when he is an independent officer, must stand or fall by himself; and to him, unless otherwise provided by statute, the maxim *respondeat superior* does not apply: Wh. Neg., 289."

In *Schroyer v. Lynch*, 8 Watts 453, 458, cited in the *Boyd* case, supra, the plaintiff sued the postmaster of Pittsburgh for failure to forward to the plaintiff a letter containing bank notes. The negligent acts alleged were performed by the postmaster's clerks or assistants who were appointed by him but paid by the United States Government. This court upheld the trial judge's charge that the defendant was liable only for his own personal misconduct or neglect and not for that of his subordinates. Chief Justice GIBSON spoke as follows: "That the privity which springs from appointment to office constitutes the relation of master

and servant betwixt the immediate parties, is a principle on which no government has been, or can be, constructed; the man is the servant of the party that pays him."

The Supreme Court of the United States declared in *Robertson v. Sichel*, 127 U. S. 507, 515-516, that, "A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties. Story on Agency, §319." In that case, it was held that a collector of customs is not personally liable for the negligence of a subordinate in keeping the trunk of an arriving passenger on a pier rather than properly sending it to the public store. As a result of the subordinate's negligence, the trunk was destroyed by fire. The Supreme Court recognized that "The subordinate who was guilty of the wrong, if any, would undoubtedly be liable personally for the tort, but to permit a recovery against the collector, on the facts of this case, would be to establish a principle which would paralyze the public service. Competent persons could not be found to fill positions of the kind, if they knew they would be held liable for all the torts and wrongs committed by a large body of subordinates, in the discharge of duties which it would be utterly impossible for the superior officer to discharge in person." Continuing, the Supreme Court further pointed out that "In Keenan v. Southworth, 110 Mass. 474, it was held, that a postmaster was not liable for the loss of a letter, occasioned by the negligence or wrongful conduct of his clerk. The Court said: 'The law is well settled, in England and America, that the postmaster general, the deputy postmasters, and their assistants and clerks, appointed and sworn as required by law,

are public officers, each of whom is responsible for his own negligence only, and not for that of any of the others, although selected by him and subject to his orders.' The court cited to sustain this view [cases from many jurisdictions including Schroyer v. Lynch, 8 Watts 453]." That *Robertson v. Sichel,* supra, continues to be recognized as the controlling federal authority on the point under consideration, see *Larson v. Domestic & Foreign Corp.,* 337 U. S. 682, 688, f.n. 8.

Outside jurisdictions hold to like effect. In *Dowler v. Johnson,* 225 N. Y. 39, 121 N.E. 487, Judge CARDOZO said "We do not doubt the rule invoked by counsel for the defendant, and sustained by superabundant citations, that public officers are not liable for the negligence of their subordinates unless they co-operate in the act complained of, or direct or encourage it [citing cases including Robertson v. Sichel, 127 U. S. 507 and Story on Agency, §319]. That is at least the general rule, and, if it is subject to any other qualifications, they are not now material."

In *State v. Kolb,* 201 Ala. 439, 78 So. 817, the State Commissioner of Agriculture and Industries was held by the Supreme Court of Alabama not to be liable for the default of his special food and drug clerk. It was there stated that "The general proposition that an officer is not liable for the defaults and misfeasances of his clerks or assistants, even though they are appointed by him and are under his control, in the absence of allegation and proof that the officer was negligent or at fault in failing to exercise proper care and prudence in selecting the assistant or clerk, or in failing to properly supervise and superintend the acts and services of such employe in the work for which he was so selected, the doing, or failure to do which caused the loss or injury or damage, is well settled. In such cases, in the absence of a special statute or law to the con-

trary, the assistant or clerk, and his bondsmen if any he have, are liable, but not the officer or his bondsmen. This has been repeatedly decided by this and most other courts." See, also, to similar effect, *Smith v. Olander,* 251 Mich. 503, 232 N.W. 364.

In *Union Bank & Trust Co. of Los Angeles v. Los Angeles County,* 11 C. 2d 675, 81 P. 2d 919, the clerk of the Superior Court was held not to be liable, under the doctrine of *respondeat superior,* for the embezzlement of funds by his chief deputy even though the clerk was held to be liable under the terms of his official bond. The court there said, "We are satisfied that [the clerk of the Superior Court] and his sureties are not liable under common-law principles of tort or agency." Again, in *Van Vorce v. Thomas,* 18 C.A. 2d 723, 64 P. 2d 772, the marshal of the Los Angeles municipal court was adjudged not to be liable for injuries inflicted by the deputy marshal while attempting to serve process. In the course of its opinion, the court pertinently observed that "It is, of course, utterly impossible for the marshal of the Los Angeles municipal court to perform, personally, all the duties demanded of his office. Not by choice, but of necessity, he depends upon his deputies . . . ." And, in *Hilton v. Oliver,* 204 Cal. 535, 269 P. 425, the Supreme Court of California held that the public trustees of a drainage district were not liable for the negligence of their employees in piling weeds on the bank of the drain if the trustees did not direct or countenance the particular negligent acts.

The Councilmen of the City of Portland, Oregon, were held not to be liable in *Colby v. City of Portland,* 85 Ore. 359, 166 P. 537, for the negligence of their subordinates in failing to keep the public streets in good repair. The court expressly recognized that, "It is the universal rule that a public officer is not personally liable for the negligence of an inferior officer,

unless he, having the power of selection, has failed to use ordinary care in the selection. Story on Agency (9th Ed.) §321; [and cases cited]."

In *Bowden v. Derby,* 99 Me. 208, 58 A. 993, the following appears in the opinion of the court: "The defendant was the street commissioner of the city of Rockland, and in that capacity had charge of the erection of the wall. He employed the laborers, who were paid by the city. In all this he acted as a public officer, and was responsible only for reasonable care in the selection of men and materials which he supplied. Beyond this he was under no liability, except for his own acts. The relation of master and servant did not exist between the defendant and the laborers employed on the work."

In *Casey v. Scott,* 82 Ark. 362, 101 S.W. 1152, where a Chief of Police was held not to be liable for the wrongful conduct of his appointee, the court quoted the following from 23 Am. & Eng. Ency. (2d Ed.), p. 382: " 'It is a well-settled rule that a public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done, or has personally co-operated in the negligence.' "

The rule was said to be broadly applicable in *Clough v. Worsham,* 32 Tex. Civ. App. 187, 193, where the superintendent of the State Lunatic Asylum was held not liable for the negligent conduct of a subordinate in improperly allowing an incompetent patient to be taken outside the grounds of the asylum for the purpose of doing work. The court quoted from Story on Agency, which has been cited and followed in many of the cases hereinabove referred to, as follows: "And here the doctrine is now firmly established, that pub-

lic officers and agents are not responsible for the misfeasances or positive wrongs, or for the nonfeasances or negligences or omissions of duty, of the subagents or servants or other persons properly employed by and under them, in the discharge of their official duties. . . . The rule which we have been considering, that where persons are acting as public agents they are responsible only for their own misfeasances and negligences, and not for the misfeasances and negligences of those who are employed under them, if they employed persons of suitable skill and ability, and have not co-operated in or authorized the wrong, is not confined to public officers or agents of the government in a strict legal sense; but it applies equally to other public officers or agents engaged in the public service or acting for public objects, whether their appointments emanate from particular public bodies or are derived from general laws, and whether those objects are of a local or of a general nature."

22 Ruling Case Law 487 states the prevailing rule as follows: "Public officers and agents of the government are not liable for the acts or defaults, negligence or omissions of subordinate officials in the public service, whether appointed by them or not, unless they direct the act complained of to be done, or personally co-operate in the negligence from which the injury results. Where the subordinates have been appointed by them it is sufficient if they have employed trustworthy persons of suitable skill and ability, and have not been negligent in selecting such subordinates."

The general rule as to the non-liability of a public officer for the negligence of a subordinate has been followed by the courts of this country with unvarying uniformity; and the present plaintiff has not cited a single relevant authority to question it. *Saylor v. Commonwealth,* 1 Sadler 535, upon which the plaintiff princi-

pally relies and mistakenly describes as a case involving "the same situation as is involved in the present case" is obviously not in point. In the *Saylor* case, the negligence for which the prothonotary was held answerable in damages was *his own* conduct in improperly entering a judgment. While, ordinarily, one guilty of negligence causing harm to another can be made to respond in damages (as the rule, which we herein advocate, specifically so recognizes) even a prothonotary's liability for his own indexing mistake may be open to question (see *Prouty v. Marshall,* post). In any event, the actionable negligence in the *Saylor* case was the prothonotary's. The other cases cited by the plaintiff ostensibly on the question of the prothonotary's vicarious liability for his subordinate's mistake (*Ziegler v. Commonwealth,* 12 Pa. 227; *Van Etten v. Commonwealth,* 102 Pa. 596; *Wilson v. Arnold,* 172 Pa. 264, 33 A. 552; and *Commonwealth v. Cruikshank,* 251 Pa. 390, 96 A. 825) are equally inapposite for the same reason as the *Saylor* case. None of them is concerned with any question of the defendant's liability under the doctrine of *respondeat superior.*

There are, however, two ancient decisions of this court, which, strangely enough, the plaintiff has not cited, that stand for the proposition that a public officer (in each case, a sheriff) is liable for damages caused by the negligent act of his deputy in the performance of his assigned duty. The first of these cases (*Hazard v. Israel,* 1 Binney 240) was decided in 1808 and the other (*Wilbur v. Strickland,* 1 Rawle 457) in 1829. Except for the citation of the *Hazard* case in the subsequent *Wilbur* case, neither of them, since then, has ever been cited for the ruling above stated. Both cases were completely ignored in *Schroyer v. Lynch,* supra, decided by this court in 1839, and the ruling in the *Schroyer* case was followed in *Boyd v. The Insur-*

*ance Patrol of Philadelphia,* supra, which continues to be the latest authoritative pronouncement by this court on the question under consideration. *Hazard v. Israel* and *Wilbur v. Strickland* must therefore be deemed as having been intentionally passed by in this court's subsequent germane decisions and are consequently to be disregarded. It is interesting to note that the rationale of the rule enunciated in *Hazard v. Israel,* as nonsequaciously voiced by the court, was that "sheriff's deputies are frequently men of small property, and sometimes of bad character; and the responsibility ought to rest on the principal, who has the sole power of appointing and removing them." A grim observation! But hardly legally sufficient to make a whipping-boy of the sheriff.

The Superior Court's decision was based largely on the prothonotary's control of his subordinates, which is, of course, evidentially material in determining whether the doctrine of *respondeat superior* is applicable. But control is by no means the only essential factor. Equally important to the relation of master and servant is the fact as to whose matters or pecuniary interests the subordinate is employed to serve. The Restatement, Agency, §220(1), in defining a servant specifies two requisites, viz., "A servant is a person employed to perform services for another *in his affairs* and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right of control" (Emphasis supplied). Control of the subordinate is but one of the essential elements. It is also necessary to the rule of *respondeat superior* that the subordinate be employed to perform services in the affairs of the master. In *Benedict v. Bondi,* 384 Pa. 574, 122 A. 2d 209; *McConnell v. Williams,* 361 Pa. 355, 65 A. 2d 243, and *Mature v. Angelo,* 373 Pa. 593, 97 A. 2d 59, which have been brought to

our attention, the defendant in each instance was liable for the negligence of the particular subordinate for the reason that both of the above specified requisites were satisfied, i.e., the servants were employed (1) to perform services in aid of the master's private business affairs and (2) were subject to his control.

In the instant case the employees in the office of the prothonotary of Allegheny County are not employed in the private affairs of the incumbent prothonotary. They are public servants employed and paid by the County of Allegheny for the performance of certain of that County's public affairs. There is no more reason for holding Roberts liable for the negligence of the indexing clerk in his office than there would be for holding a mill superintendent in the Homestead Works liable for the negligence of one of the employees who works under his control and supervision but is employed and paid by the United States Steel Corporation for the furtherance of its business.

Nor is there any legal justification for imposing personal liability on the prothonotary in the proffered suggestion that he could protect himself against liability by securing a bond from his employees. The existence or non-existence of indemnity insurance is wholly irrelevant to the question of legal liability. *Kesman v. Fallowfield Township School District,* 345 Pa. 457, 458, 29 A. 2d 17. Indeed, Roberts had a right to rely on the decisions of this court exempting public officials from liability for negligent acts of their subordinates. It was not necessary for him to require indemnity bonds against a liability for which he could not be made legally responsible. If the rules heretofore stated by this court in *Boyd v. The Insurance Patrol of Philadelphia,* supra, and *Schroyer v. Lynch,* supra, were to be followed, as Roberts had a right to expect they would be, the securing of indemnity bonds

covering negligence of subordinate employees would be an unnecessary expense to the employees and a needless protection to the prothonotary.

The fundamental reason why a public official is not liable for the negligent act of a subordinate is contained in what Chief Justice GIBSON recognized over a hundred years ago in *Schroyer v. Lynch,* supra. No government could be constructed on the principle of the master and servant relation, which would make a public officer personally liable for the negligent acts of a subordinate. If the rule were otherwise, the burden which such a liability would impose on public officers (most of whom serve on fixed modest salaries) would be onerous to the point of being unbearable. If Roberts were to be held liable for the negligence of the indexing clerk in his office under the facts of this case, all public officers would be liable for the negligent acts committed, within the scope of their employment, by all employees under the control of such officers. It is unnecessary to multiply the many illustrations, that readily come to mind, of the dire consequences to which such a rule would lead. It is sufficient to observe that a recovery against a public officer for such a liability might readily consume several years' salary or even the savings of a lifetime. Public service would indeed become a perilous venture which could be undertaken safely only by those who are so impecunious as to be permanently execution-proof.

The injustices which such a rule would inflict become especially evident when applied to the head of a public office of the magnitude of the office of prothonotary of Allegheny County which registers approximately 300,000 judgments and monetary liens each year for an average of approximately 1,000 for each working day. The aggregate face value of these

liens is roughly $93,000,000 annually. To carry on the
many phases of the work of the prothonotary's office,
it is necessary for the County of Allegheny to employ
165 persons. Obviously, it is physically impossible for
the prothonotary to supervise personally each index
or docket entry. His legal duty is to establish ade-
quate supervisory procedures and there is not the
slightest suggestion here that defendant Roberts has
failed to do so.

Furthermore, the prothonotary does not have the
same degree of control over the number and ability of
his office staff as a private employer in business would
have. The number of employees in the office of the
prothonotary and their salaries are determined by the
County Salary Board, a body which consists of the
three County Commissioners, the County Controller,
and the head of the particular office whose personnel
requirements are, at the time being, under considera-
tion. It is plain enough that the County of Allegheny,
rather than the prothonotary, is in fact the employer
of the clerks who work in his office. It is the County
which pays them for their services and it is the Coun-
ty which receives the proceeds of the fees collected for
the services rendered by that office.

We have treated thus far with the question of the
prothonotary's liability for the negligent act of his
subordinate at great length because of the wide im-
portance of the principle involved. We may advert,
in passing, to a rule of law which would seem to deny
to the plaintiff a right of recovery against anyone for
damages for the clerk's mistake in indexing the judg-
ment. It is the duty of a person offering an instru-
ment for record to see that it is both properly recorded
and properly indexed: *Prouty v. Marshall*, 225 Pa. 570,
576-577, 74 A. 550. Speaking for a unanimous court
in the *Prouty* case, Mr. Justice POTTER said, "In the

case at bar, the duty was upon the mortgagee to give notice that L. J. Marshall had executed to her a mortgage upon the premises in question. If from any cause she fell short of giving legal notice [i.e., by recording and indexing], the consequence must fall upon her. She cannot hide behind the mistake of the recorder. It is an easy matter for a mortgagee, or a grantee in each particular instance, either in person, or by a representative, to look at the record, and see that the instrument has been properly entered." The decision in the *Prouty* case, supra, reversed the judgment of the Superior Court: see 36 Pa. Superior Ct. 527. In a subsequent case (*Apollo Borough v. Clepper*, 44 Pa. Superior Ct. 396, 406), the Superior Court quoted with effect from this court's opinion in *Prouty v. Marshall*, supra, that " 'The obligation of seeing that the record of an instrument is correct must properly rest upon its holder.' "

That brings us to a consideration of the question of the defendants' liability under Roberts' fidelity bond in favor of Allegheny County for use, etc., as required by Act of April 3, 1945, P. L. 115, §1, which was in force at the time the bond in suit was given. In treating with this question it is to be kept clearly in mind that it is not liability of Roberts under the rule of *respondeat superior* which the fidelity bond covers or was intended to cover. The principal sum of the bond, which is of course the limit of the surety's liability, is $40,000—a sum that can hardly be thought to have been intended as insurance against possible liabilities of the prothonotary growing out of his transactions with the public aggregating annually $93,000,000. Liability under the bond depends entirely upon its express provisions and not on an interpretation of it affected by the law of master and servant.

Two provisions of the bond are specially pertinent to the question of liability under the facts of this case. One of these provisions declares "Now, THE CONDITION OF THIS OBLIGATION IS SUCH, That, if the above bounden DAVID B. ROBERTS, Prothonotary in the Court of Common Pleas of Allegheny County, and his deputies, clerks, assistants, and appointees, shall faithfully discharge all trust confided in him and all duties required of him by law and faithfully execute the duties of the office of Prothonotary, and shall faithfully and well and truly account for and pay according to law all moneys which are received by him or them in their official capacity, and shall deliver the books, seals, records, writings, and papers belonging to the office of said Prothonotary, whole, safe, and undefaced to his successor in said office, then this bond shall be void: otherwise to be and remain in full force and virtue."

The bond is signed by David B. Roberts as principal and by the Continental Casualty Company as surety rather than as indemnitor. The ultimate liability, whatever it may be, rests upon the principal.

Concededly, such an undertaking has the effect of making the principal liable on his bond for his own negligent acts committed in the performance of his duties. *Van Etten v. Commonwealth,* 102 Pa. 596. And, since the clause also provides that "his deputies, clerks, assistants, and appointees" shall faithfully perform their duties, the plaintiff argues that the signers of the bond are liable thereunder for the negligent acts of such deputies, clerks, assistants and appointees. However, there is a further provision in the bond which negates liability of the principal for negligent acts of his subordinates, etc., committed (as in this case) in a manner other than as contemplated by the bond which stipulates that the principal and surety "are

held and firmly bound unto the COUNTY OF ALLE-
GHENY, a political sub-division of the Commonwealth
of Pennsylvania, for the use of the said County of Al-
legheny and of the Commonwealth of Pennsylvania
and of such other party or parties *for whom* he shall
collect or receive money, as the interest of each shall
appear, in case of a breach of the conditions hereof,
in the sum of FORTY THOUSAND AND 00/100 ($40,-
000.00) DOLLARS . . ." (Emphasis supplied).

Thus, by the express terms of the bond an action
could be brought for the plaintiff only in case he was
a party *for whom* the prothonotary had collected or
received money. But Orris does not claim that any
money was paid into the prothonotary's office for his
benefit. He avers that he paid the statutory filing fee
of $2.50 at the time he filed his judgment note. That,
of course, was money received *from* him and not *for*
him. The averment is plainly irrelevant to the re-
quirement of the bond. If the bond had been designed
for the protection of all parties who file judgments
or other legal instruments in the office of the prothon-
otary, for which they pay the required fees, it should
have expressly so stated. But, it provides only that
actions can be brought "for the use of the said Coun-
ty of Allegheny and of the Commonwealth of Pennsyl-
vania and of such other party or parties *for whom* he
[the principal] shall collect or receive money . . ."
(Emphasis supplied). Thus, by the bond's express
terms, private individuals are not protected by it un-
less money has been paid to the prothonotary for their
account or benefit—a situation which arises ordinarily
as a result of a court order providing for the payment
of money into court or an impounding of moneys for
any reason. The present plaintiff is not within the
category of designated beneficiaries under the bond.
To allow him a recovery on the bond would be to im-

pose a liability upon Roberts for which he is not responsible. For even though the Casualty Company would pay the recovery in the first instance, Roberts would be liable over to the Casualty Company as the principal in the bond. As already stated, the bond is a fidelity bond to the County of Allegheny for use, etc., and not an indemnity bond to Roberts. The bonding company is but a surety; and it is well settled that a surety which has been compelled to pay a loss is entitled to enforce reimbursement from the principal: Lacock v. Commonwealth, 99 Pa. 207.

If liability were to be imposed on the defendants under the bond, Roberts would thereby be made answerable in damages for the negligent act of his indexing clerk, for which he is not liable on the principle of respondeat superior, all because of his official fidelity bond which was not intended to and does not cover a loss such as that for which the plaintiff claims. Such a holding would be as unjust as it would be irrational.

The judgment of the Superior Court is reversed and is here entered for the defendants.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The question involved is narrow but very important —Is the Prothonotary of Allegheny County and his surety liable on his official bond to a judgment creditor who was damaged by the failure of the Prothonotary's authorized clerk to properly index a judgment?

The facts are admitted. The use claimant properly brought an action of assumpsit in the name of the Commonwealth against Roberts and the surety on Roberts' official bond. The Superior Court entered a judgment for the plaintiff. Roberts alone appealed. We believe it is a justifiable inference that the surety

took no appeal because it recognized that it was undoubtedly liable under the bond.

The Act of March 29, 1827, P. L. 154, §3, 17 PS §1903, made it the duty of the Prothonotary in the several counties to make, prepare and keep judgment dockets.*

The Act of April 22, 1856, P. L. 532, §3, 17 PS §1922, required a creditor, in order to obtain a lien on the debtor's real estate within the county, to cause his judgment to be indexed in a book to be called the judgment book; "and it shall be the duty of the prothonotary or clerk forthwith to index [said judgments] according to priority of date, and the plaintiff shall furnish the proper information to enable him to perform said duty."

The Act of April 14, *1834*, P. L. 333, §76, 17 PS §1481, provides: "The Prothonotaries and clerks of the several courts of this Commonwealth shall, before they enter upon the duties of their offices, respectively, make oath or affirmation . . . to perform the duties of the respective office with fidelity; they shall also with one or more sureties . . . give a joint and several bond to the Commonwealth, *with condition faithfully to execute the duties of their respective offices,* and well and truly to account for and pay according to law all moneys which shall be received by them in their official capacity . . . ."

Pursuant to the aforesaid Acts and particularly the Act of 1834, Roberts, as principal, and Continental Casualty Company, as surety, on December 11, 1951, executed a bond, the condition of which was:

"Now THE *CONDITION* OF THIS OBLIGATION IS SUCH, That if the above bounden David B. Roberts,

---

* This statutory duty was not restricted, as Roberts contends, to those prothonotaries who were paid on a fee basis but was imposed upon all prothonotaries in Pennsylvania.

Prothonotary in the Court of Common Pleas of Allegheny County, [1] *and his deputies, clerks, assistants and appointees, shall faithfully discharge all trust confided in him and all duties required of him by law and faithfully execute the duties of the office of Prothonotary, and* [2] shall faithfully and well and truly account for and pay according to law all moneys which are received by him *or them* in their official capacity, and [3] shall deliver the books, seals, records, writings and papers belonging to the office of said Prothonotary, whole, safe and undefaced to his successor in said office, then this bond shall be void; otherwise to be and remain in full force and virtue."

The bond could not possibly be clearer—it is not restricted to mistakes or negligent acts or embezzlements by the Prothonotary personally; it is conditioned upon *the faithful execution* not only by the Prothonotary himself, but also *by his deputies, clerks, assistants and appointees, of all duties required of him by law,* as well as and in addition to the duty to account and pay all monies which are received by him or by them in their official capacity. This bond was on its face, and, we repeat, by its terms clearly given to provide protection (a) not only for the failure of the Prothonotary himself or his assistants to pay all monies received by him or by them, but *also* (b) *for the failure of his deputies, clerks, assistants and appointees to faithfully and properly perform and carry out the duties of the office of the Prothonotary.* It would be a flat contradiction of the terms of the bond to say, as does Prothonotary Roberts, that the bond applies and is limited only (1) to embezzlements, and (2) to failure of the Prothonotary *personally* to properly perform his duties. Irrespective, therefore, of the aforesaid mandatory statutes, it is *clear and indisputable from the express condition* of the bond, which clearly

and specifically covers the exact situation which has arisen, that the Prothonotary and the surety believed that this coverage was part of the responsibility, obligation and liability of a Prothonotary of Allegheny County; otherwise the bond would not have been written to cover this exact situation.

The Prothonotary (Roberts) admits, as he must, that recovery can be had on this bond (1) if he or one of his deputies, clerks, assistants or appointees embezzled money or (2) if he *personally* was negligent: *Saylor v. Commonwealth,* 1 Sadler 535, 5 A. 227 (1886); *Ziegler v. Commonwealth,* 12 Pa. 227; *Van Etten v. Commonwealth,* 102 Pa. 596; *Commonwealth v. Cruikshank,* 251 Pa. 390, 96 A. 825; *Wilson v. Arnold,* 172 Pa. 264, 33 A. 552; *Mann's Appeal,* 1 Pa. 24; *McKeehan v. Commonwealth,* 3 Pa. 151; *Siewers v. Commonwealth,* 87 Pa. 15; *Watson v. Smith,* 26 Pa. 395; *M'Carahar v. Commonwealth,* 5 W. & S. 21. If Roberts is liable under the terms of his bond for embezzlements by his deputies or clerks or assistants, as he admits he is, it is inescapable that he is also liable thereunder for the negligent acts of his deputies or clerks or assistants.

The majority opinion seeks to deny recovery because they say the following provision of the bond—considered alone—protects (and allows recovery *only* to) private individuals *for whose account* money has been paid to the prothonotary: ". . . [the principal and surety] are held and firmly bound unto the County of Allegheny, a political subdivision of the Commonwealth of Pennsylvania, [1] for the use of the said County of Allegheny and of the Commonwealth of Pennsylvania and [2] of such other party or parties *for whom he shall collect* or receive money, as the interest of each shall appear, in case of a breach of the conditions hereof . . . ." Such a very unusual situation would rarely

594

ever arise as the majority concede.* Construing this one provision narrowly and alone—without conjunction with the vitally important *condition* of the bond— no suit could be brought thereon even if the County or the Commonwealth was damaged, unless a party was damaged for whom the Prothonotary collected or received money. The effect of such a construction would (1) eliminate the *Condition* of the Bond and (2) would eliminate the provision for the County and the Commonwealth and (3) would limit recovery to such parties for whom the prothonotary shall collect or receive money. Such a limited and unwarranted construction would eliminate for all practical purposes, any real protection heretofore clearly and wisely grantted to the public and to private individuals (1) under prior decisions of this Court, and (2) under the language of the pertinent Statutes of Pennsylvania, and (3) under the express language of the important and controlling *condition* and other terms of the bond. Moreover, it is obvious that this narrow interpretation of the bond is impossible, when Roberts admits that recovery can be had under the bond (1) by persons whose money has been embezzled by him or by one of his deputies or clerks or assistants; and (2) by persons who are damaged by his *personal* negligence— situations which are unmentioned in this provision of the bond.

It is both foolish and futile to ask us to believe that Roberts paid a substantial sum of money to do a useless thing, i.e., take out a bond to protect him against the exact situation which has arisen in this case, to wit, claim for damages for the negligence of "his deputies, clerks, assistants and appointees" for

---

* The majority opinion says: "A situation which arises ordinarily as a result of a Court order providing for the payment of money into court or an impounding of moneys for any reason."

which (according to the majority opinion, he knew) he was not legally liable. Yet, that is the thesis of the majority opinion.

It is clear that the Legislature, through the Act of 1834 and the above mentioned Statutes, intended to protect the people of the Commonwealth and those who were injured by the Prothonotary's failure to faithfully and accurately perform the duties of his office. To accept the majority's narrow construction of the statutes and of this official bond would not only be against the public interest, but would invalidate law which has been established in this Commonwealth for over 100 years. *Although the Act of 1834, supra, provides that the bond be given to the Commonwealth, it has been consistently interpreted by this Court to afford relief and to allow recovery to private individuals against the Prothonotary on his official bond in embezzlement and in non-embezzlement cases: Mann's Appeal,* 1 Pa. 24; *Saylor v. Commonwealth,* 1 Sadler, supra; *McKeehan v. Commonwealth,* 3 Pa. 151; *Wilson v. Arnold,* 172 Pa., supra; *Ziegler v. Commonwealth,* 12 Pa., supra; *Siewers v. Commonwealth,* 87 Pa., supra; *Commonwealth v. Cruikshank,* 251 Pa., supra; *Watson v. Smith,* 26 Pa., supra; *Van Etten v. Commonwealth,* 102 Pa., supra; *M'Carahar v. Commonwealth,* 5 W. & S., supra.

While no authority is needed when the condition of the bond is so clear, nevertheless the principles enunciated by the decisions of this Court hereinabove cited establish the right of a person who has been damaged by the negligence of a prothonotary to recover on his official bond.

In the leading case of *Saylor v. Commonwealth,* 1 Sadler, supra, a recovery was allowed to a private individual in an action of debt against the Prothonotary and his surety on his official bond. The Court af-

firmed on the opinion of President Judge HAGENMAN, in which he aptly said: "The inquiry arises: Is the prothonotary liable on his official bond for the loss sustained by the plaintiffs occasioned by his mistake?

"The 76th section of the act of April 14, 1834, provides that the prothonotary shall 'give a joint and several bond to the commonwealth in such sum as the governor shall judge sufficient, with condition faithfully to execute the duties of . . . [his] office.' "

The Court then quoted the 77th section of the same Act which set forth in detail the powers and duties of the Prothonotaries, and then said: "That these are all the duties required of prothonotaries no one will pretend. They are by law compelled to perform numerous acts, for misfeasance or errors regarding which they and their sureties are liable. . . .

". . . By far the most important and responsible duty of the prothonotary is to enter judgments correctly. As to mistakes or omissions in other matters connected with the office, an amendment will correct the error. But not so with judgments. A wrong name or amount in entering of a judgment or an omission to properly enter or index it, will in most instances subject a plaintiff to loss before the mistake is discovered, and when discovered, it is too late to remedy the evil. There is no principle of law better settled than where a prothonotary makes a mistake in entering a judgment, and the plaintiff sustains a loss, he has a remedy on the prothonotary's official bond . . . . A party who takes the office gives a bond conditioned faithfully to discharge all its duties. To enter judgments is one of them, indeed the most important one. Hence, being an essential part of the duties of the officer, a failure to perform them properly *makes him liable on his official bond, to the party injured.*"*

---

* Italics throughout, ours.

In *Van Etten v. Commonwealth*, 102 Pa., supra, the Prothonotary erroneously satisfied a judgment in the judgment docket. The plaintiff, a private party, sued *successfully* on the Prothonotary's official bond for the damages sustained. In that case the official bond was given only for the use of the Commonwealth, viz.: "[Principals and surety] . . . are held and firmly bound unto the Commonwealth of Pennsylvania for the use thereof, . . ."; and was conditioned upon the faithful execution of duties by the Prothonotary.

*Commonwealth v. Cruikshank*, 251 Pa., supra, is equally apposite and controlling. In that case the plaintiff, an individual, in the name of the Commonwealth sued the Prothonotary on his official bond for damages resulting from the erroneous indexing of a judgment. In that case the bond was given only to the Commonwealth, viz.: "[Principal and surety] . . . are held and firmly bound unto the Commonwealth of Pennsylvania, for the use thereof, . . ."; and was conditioned upon the faithful execution by the Prothonotary of his duties. This Court held that plaintiff was entitled to recover on the bond if he had any interest in the land which could be bound by the judgment, but the jury found that he had no such interest.

In *M'Carahar v. Commonwealth*, 5 W. & S. 21, a recorder of deeds and mortgages was held liable on his official bond to a private party for an erroneous certificate concerning mortgages of record. The recorder received a fee of 75¢ allowed by law for said certificate. The bond was given only to the Commonwealth, viz.: "[Principal and sureties] . . . are held and firmly bound unto the Commonwealth of Pennsylvania for the use thereof . . ."; and was conditioned upon the faithful execution and performance by the recorder of his duties.

In *Wilson v. Arnold,* 172 Pa., supra, the Court said (page 274) : "When the defendant, as prothonotary of the court of common pleas of Clarion county, was directed to issue the alias testatum fieri facias in question, it was manifestly his duty to inspect the record of plaintiff's judgment and see that the writ conformed thereto in every material particular. If he neglected to do so and in consequence thereof any part of the claim was lost, he is liable to respond in damages to the extent of plaintiff's loss."

In *Siewers v. Commonwealth, to use of Hauseman,* 87 Pa., supra, the Commonwealth, to the use of Hauseman, brought an action of debt against Siewers, the Prothonotary, and his sureties on the official bond of said Prothonotary, for damages resulting from an erroneous certificate of search. The Court sustained a recovery against the Prothonotary and his sureties on the official bond of said Prothonotary "on the principles of Zeigler v. Commonwealth, 2 Jones 228; McCarahan v. Commonwealth, 5 W. & S. 21; and Hauseman v. Girard Loan & Building Association, [31 P. F. Smith, 256]".

In *Ziegler v. Commonwealth,* 12 Pa., supra, plaintiff brought an action of debt against the Prothonotary and his sureties, in the name of the Commonwealth, on the Prothonotary's official bond for damages incurred by a purchaser of land through a mistake in the certificate of judgments. The Court affirmed the liability of the Prothonotary and his sureties.

These cases directly control the instant case and clearly hold that plaintiff could bring a suit on Roberts' official bond for damages resulting from negligence in the performance of the Prothonotary's duties.

We shall discuss the other reasons relied upon in the majority opinion, although in view of the statutes and the *condition* of Roberts' bond, we consider them

to be irrelevant. Roberts contends that it would be extremely harsh and unjust to impose a liability on a Prothonotary for the negligence of his clerk in the light of modern conditions. It is obvious that a Prothonotary could not personally supervise or check judgments approximating 300,000 in number which are entered in Allegheny County each year. Nevertheless, if the Legislature requires as a necessary *prerequisite* to a Prothonotary "entering upon the duties of his office" that he give a surety bond to cover damages resulting from *errors* in the execution of the duties of his office, as well as for embezzlement, *the Courts have no right to ignore the mandate of the Legislature.* Moreover, if the Prothonotary is not liable for errors of his deputies, clerks, assistants and appointees unless he *personally* participated therein, *he could easily avoid all liability,* thus leaving the public without adequate protection, by merely assigning certain duties to each deputy, clerk, assistant and appointee, and refrain and abstain from any personal activity in the performance of his official duties. *To so interpret the Acts and in particular the present bond, would be contrary to their language, as well as to the public interest.* Furthermore, the Prothonotary admits, as, we repeat, he must, that if one of his deputies or clerks or assistants or appointees embezzled money which has been paid into his office, he would be personally liable under the aforesaid Statutes and *under this bond.* If, as is conceded, the language of the Statutes and of the bond is broad enough to cover embezzlements by his deputies, clerks, assistants and appointees, it cannot possibly be narrowed so as to exclude acts of negligence by his deputies, clerks, assistants and appointees, *since the language covering performance of duties and payment of monies is, under the Act of 1834 and also under the "condition" of this bond, exactly the same.*

Further reflection and analysis reveal that the harshness complained of (with its resulting alleged injustice) is not peculiar to the Prothonotary; it is prevalent in every field of private business even where no statutory duties or obligations or bonded liabilities are imposed. For example, under the principle or maxim of "respondeat superior" (i.e., principal and agent, employer and employee, master and servant) the individual or partnership—whether it be investment bankers or lawyers or insurance brokers or any other private business, and whether it be composed of one man or many men, and whether one or hundreds or thousands of agents or employees or servants are employed—is liable for the negligence of (his or) their agents or employees or servants in carrying out the duties of the principal or superior. If, for example, X orders the purchase of 100 shares of General Motors at 50 and an employee of the brokerage firm forgets to enter the order or enters an erroneous order, the partners are liable for the damages, even though there was no fraud or embezzlement, and even though none of the partners was personally guilty of negligence. The books are literally filled with cases where employers have been held liable in damages for the negligence of their automobile driver (agent, employee or servant), yet in such cases there was no fraud, there was no negligence on the part of the principal or employer personally, and it was a "practical" impossibility for him, as it was for the Prothonotary, to personally perform or supervise the work of the agent, employee or servant. This is so commonplace we sometimes forget that the maxim of respondeat superior is not, and, in practice and principle, cannot be limited merely to negligence in automobile cases.

Moreover, the so-called harshness of this decision vanishes when it is recalled that Roberts, as Prothono-

tary, could have protected himself by securing a bond from his employees covering both their negligence and their acts of embezzlement, and even more important, he could and, we hope, he has taken out an indemnity bond against embezzlement and acts of negligence by his deputies, clerks, assistants and appointees, which would fully protect him. This indemnity insurance can be obtained, as it has been in the County of Philadelphia, for a very small premium which, incidentally, is paid by the County. We doubt that the public would be satisfied today with a lower standard of responsibility and liability for a public official in the conduct of his official duties than it requires of a person or firm in the conduct of his or their private business.

The majority opinion further asserts that the principle of respondeat superior should not apply to Roberts because his deputies, clerks, assistants and appointees are employed and paid by the County of Allegheny. Roberts had the right to select who should be employed and the right to dismiss them once employed. More particularly, *Roberts had the right of supervision, assignment and control* over his deputies, clerks, assistants and appointees in the performance of the duties assigned to them by him. *This criterion provides the key or most important test,* rather than the test of who employs and pays them. That this is the correct test, irrespective of the confusion created by earlier authorities, is made crystal clear by the recent cases of *Benedict v. Bondi,* 384 Pa. 574, 122 A. 2d 209; *McConnell v. Williams,* 361 Pa. 355, 65 A. 2d 243; and *Mature v. Angelo,* 373 Pa. 593, 97 A. 2d 59. These cases are so recent it is unnecessary to discuss them in detail; it will suffice to say that they answer and clearly refute the majority's position on this point.

We do not believe it is necessary to predicate liability upon the principle or maxim of respondeat supe-

rior* or decide whether that principle would apply to a public official in the absence of a pertinent mandatory statute or a pertinent bond. It will suffice to note that the Pennsylvania and the United States decisions relied upon by the majority opinion merely lay down a general rule and are clearly distinguishable, since no bond and/or no statute was involved.

To summarize: Prothonotary Roberts' official bond was intended to protect the public and by its clear and specific *condition* clearly and specifically covers those who are damaged by the negligence of the deputies, clerks, assistants and appointees of the Prothonotary in the conduct of the official business of the Prothonotary's office. For this reason, I would affirm the Judgment of the Superior Court.

Mr. Justice BENJAMIN R. JONES joins in this opinion.

---

* See, however, *Hazard v. Israel*, 1 Binney 240 and *Wilbur v. Strickland*, 1 Rawle 457, where sheriffs were held responsible in civil trespass actions for the negligence of their deputies in the execution of a writ.